**UNITED STATES of America, Plaintiff,**

v.

**D. P. DOUGLAS, Mrs. B. N. Moore, Miss Vivian Myers, and Sarah Ellis Pugh, Executrix of the estate of Frank H. Pugh, Deceased, Defendants.**

Civ. A. No. 303.

United States District Court
N. D. Florida, Marianna Division.

April 10, 1957.

Wilfred C. Varn, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff.

Thomas Sale, Panama City, Fla., for defendants.

DE VANE, Chief Judge.

After a vigorous battle between counsel for the respective parties with reference to the validity of certain defenses interposed by defendants, this case finally comes before the Court on a joint motion for judgment on the pleadings. As the case now stands before the Court, there is no factual controversy and the only issue is that of the legal liability of the defendants in the case.

The pleadings disclose that prior to April 28, 1942, D. P. Douglas, Mrs. B. N. Moore, Miss Vivian Myers, and Frank H. Pugh organized the D. P. Douglas Construction Company, Inc., a Florida corporation, to perform a certain contract in connection with the construction of the Wainwright Shipyard at Panama City, Florida. The authorized capitalization was 500 shares of common stock of the par value of $100 each. One hundred fifty shares were issued and distributed as follows:

| | |
|---|---|
| D. P. Douglas | 50 shares, |
| Mrs. B. N. Moore | 80 shares, |
| Miss Vivian Myers | 10 shares, |
| Frank H. Pugh | 10 shares. |

Each shareholder paid $100 per share for the stock purchase, making a total paid in cash capital of $15,000. This money was used to buy the necessary equipment for the corporation to perform its contract. The contract was completely performed before December 31, 1942, whereupon the corporation paid its income and excess profit taxes due the Government, all of its outstanding obligations at the time, disposed of its capital assets, and then on December 31, 1942, declared a liquidating dividend to the defendants in the following amounts:

| | |
|---|---|
| D. P. Douglas | $ 8,750.00 |
| Mrs. B. N. Moore | 14,000.00 |
| Miss Vivian Myers | 1,750.00 |
| Frank H. Pugh | 1,750.00 |
| Total | $26,250.00 |

The contract the D. P. Douglas Construction Corporation, Inc., held for the performance of the work at Wainwright Shipyard at Panama City, Florida, turned out to be a windfall, and the corporation paid to the United States Government excess profit taxes in the sum of $71,688.77. Upon the payment of these taxes, the United States issued to the D. P. Douglas Construction Corporation, Inc., two postwar credit bonds in a sum equal to 10% of the excess profit tax paid, totaling $7,168.88. These bonds were later, on August 9, 1946, redeemed upon presentation to the Treasury Department of evidence of the dissolution of the D. P. Douglas Construction Corporation, Inc., and Treasury check in the sum of $7,168.88 was drawn to the order of "D. P. Douglas, Frank H. Pugh, B. N. Moore, and Vivian Myers, Directors and Trustees of D. P. Douglas Construction Corporation", and said Treasury check was cashed by the defendants and distributed among them in proportion to their stockholding interest in the corporation.

No legal steps were taken to dissolve the D. P. Douglas Construction Company, Inc., and it was dissolved by operation of Florida law on or about May 12, 1946. Subsequent to its legal demise, the United States Maritime Commission entered upon an investigation to determine the reasonableness of the profits realized by the corporation under its contract with the Government and to consider whether the contract should be renegotiated (50 U.S.C.A.Appendix, § 1191 as amended). The record does not disclose precisely how the directors and stockholders received notice of the hearing, but it does disclose that the parties were represented at the hearing by D. B. Smith, the Auditor and Tax Expert who audited all books and accounts of the corporation in connection with the payment of its income and excess profit taxes, other debts and liabilities, and the pro-rata distribution of the remaining funds in the treasury of the corporation to the several stockholders. The hearing before the United States Maritime Commission resulted in a determination that the profits of the corporation on its contract exceeded by $55,000 the amount the corporation was legally entitled to receive under the provisions of the Renegotiation Act.

Then going through with a series of figures, which it is unnecessary to set out in this Memorandum-Decision, the Maritime Commission came to the final conclusion that the officers and stockholders of the corporation still owed the United States the sum of $10,743.67 on account of its excess profits, and $4,302.75 as an overpayment on the $7,168.88 of Treasury bonds issued to the corporation at the time the excess profit taxes were paid, making a total of $15,046.42, which plaintiff seeks to recover with interest in this suit.

The Renegotiation Act provided for an appeal within a limited period of time from the determination of the United States Maritime Commission with respect to the profits realized by the corporation on the contract with the Government. No appeal was taken in this case and under the law, the decision of the United States Maritime Commission became binding on the officers and stockholders of the corporation and upon this

Court. Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694. It is for this reason that the facts in this case are not set forth with any greater particularity.

We are dealing here simply with the question of liability of these defendants, jointly and/or severally, for the amount sued for, with the question of the application of the statute of limitations or laches and with the question whether interest should be assessed, and if so, for what period. With this brief narration of the facts in the case, the Court now passes to the issues before it.

 Florida has statutes of limitations (Chapter 608, F.S.A.) that have long since barred any claim against these defendants in their capacity as former stockholders, officers and directors of this corporation insofar as those statutes of limitations are applicable. It is well settled, however, that the United States is not bound by State statutes of limitations or subject to the defense of laches in enforcing its rights. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283, and cases therein cited. Therefore, despite the dilatory conduct of the plaintiff in the assertion of this claim and the institution of this suit, plaintiff has the legal right to maintain this suit.

 Passing next to the question of liability of these several defendants, the facts as set out above disclose that the business affairs of this corporation were wound up in the month of December, 1942, that all of its known debts were paid, that its capital assets were sold and converted into cash, and a complete distribution of all the money in its treasury, including capital and profits, in the sum of $26,250 was made to the stockholders proratably. The record as stated above further discloses that this corporation was legally dissolved on or before May 12, 1946, and that the United States did not move against this corporation, its officers, directors and stockholders until June 28, 1946, and it did

not file its suit to enforce its claim until July 20, 1953. In fact, between June 28, 1946, and July 20, 1953, no further action was taken in this matter except a second notice served upon Frank H. Pugh, Treasurer of the corporation, in 1948, after the decision of the Maritime Commission had become final. Section 608.30, F.S.A., Subsection (5), provides for stockholders ratable liability for any asset received in distribution toward the payment of any valid and enforceable claim made against them as distributees, or against the corporation in which they were stockholders. While this Section is not controlling upon the Court here, there is no Federal Statute to the contrary, and the Court finds and holds that equitably the rule of ratable contribution should be applied in this case, and the judgment of this Court will run severally against the stockholders, based upon the distribution made to each.

 The Court now passes to the final issue it has in this case; that is, what, if any, interest should be allowed. The Government claims 6% from June 28, 1946. While the law fixes the amount of initial liability in this case, the question of interest upon such liability may be decided and disposed of equitably by the Court. Redfield v. Bartels, 139 U.S. 694, 11 S.Ct. 683, 35 L.Ed. 310; Royal Indemnity Company v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. The Court is of the firm opinion that to allow 6% interest on this indebtedness from June 28, 1946, in view of the long inactivity of the plaintiff in asserting and attempting to collect same would be gross injustice. The Court is of the opinion, however, that interest should begin to run from July 20, 1953, the date on which suit was filed in this case. No bona fide efforts had ever been made to collect this indebtedness or any part of it prior to that date.

Judgment in favor of plaintiff and against each defendant severally will be entered herein in conformity with this Memorandum-Decision.