Louis J. DETRIO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17306.

United States Court of Appeals Fifth Circuit.

March 10, 1959.

David W. Walters, Miami, Fla., for appellant.

David C. Clark, Jr., O. B. Cline, Jr., Richard R. Booth, Asst. U. S. Attys., Miami, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami Beach, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Transposed on to the field of administrative proceedings, this case involves essentially the problem of the satisfaction of a judgment against a partnership out of the personal property of a former partner not personally served with process.

The case grows out of the renegotiation of a World War II contract pursuant to the War Contracts Renegotiation Act, 50 U.S.C.A.Appendix, § 1191(c). Under that Act, the order for renegotiation, if not otherwise complied with, may be sued on by the Government for the recovery of the excess profits adjudged. Section 1191(c). The case comes to us from a judgment in favor of the Government granting recovery against a former partner individually for the principal of that excess ($82,629.63) plus interest for 13 years ($67,873.58). The excess profits administratively adjudged against the contractor cover the years 1943 and 1944. The principal amount, as well as the liability of the partnership's assets to respond therefor, is not open to question as the Act provides that the order is final unless modified by an appeal to the Tax Court. Section 1191 (d). Such appeal was never taken.

The basic attack by Louis Detrio which, if successful, wipes out all others, is that the two orders of the Renegotiation Board while valid against the partnership property, do not permit recovery out of his personal assets since he did not participate in the proceedings and was never served with notice of their pendency.

The facts, either admitted or stipulated formally, are not in dispute and may be briefly summarized. The contractor was a partnership trading under the name of Consolidated Tile and Deck Coverings with its principal place of business in New York City. Louis J. Detrio and another were general partners with four of his brothers and one other as limited partners under the New York Partnership Law. Louis withdrew as a partner on September 1, 1944. He was not a partner at the time the administrative proceedings were commenced or were completed. He was never served with any notice of their pendency and he was without knowledge of any kind of the proceedings or their pertinence to him. He was not a partner at the time the Order was made for 1943 (April 7, 1945) or 1944 (March 12, 1946). It is agreed, however, with respect to the partnership, that written notice by registered mail sent to the principal office of the Contractor was given as required by the Act.[1]

Thus, ten years after he had withdrawn from the partnership, the

[1] "(1) Whenever, in the opinion of the Board, the amounts received or accrued under contracts with the Departments and subcontracts may reflect excessive profits, the Board shall give to the contractor or subcontractor, as the case may be, reasonable notice of the time and place of a conference to be held with respect thereto. The mailing of such notice by registered mail to the contractor or subcontractor shall constitute the commencement of the renegotiation proceeding. At the conference, which may be adjourned from time to time, the Board shall endeavor to make a final or other agreement with the contractor or subcontractor with respect to the elimination of excessive profits received or accrued * * *. If the Board does not make an agreement with respect to the elimination of excessive profits received or accrued, it shall issue and enter an order determining the amount, if any, of such excessive profits, and forthwith give notice thereof by registered mail to the contractor or subcontractor. In the absence of the filing of a petition with The Tax Court * * * such order shall be final and conclusive and shall not be subject to review or redetermination by any court or other agency. * * *." Section 1191(c) (1).

Government successfully sought payment of the administrative order out of the personal property of Louis. He contends that where there has been no personal notice or service of process, partnership liability does not go this far and if it did, the result would offend due process. We think he is correct on the fundamental issue of partnership law, which Congress did not here intend to abrogate. Undoubtedly the partnership law that requires personal service on a partner to bind his individual assets is required by concepts of procedural due process.

The error of the District Court was the failure carefully to distinguish between *liabilities* of a partnership and the obligation of an unserved general partner to respond personally for such liabilities.

■■ The Court was eminently correct in assuming, as well as holding, that since these were contracts [2] undertaken by the partnership while Louis was yet a general partner (1943 and 1944), he had the unlimited liability of a general partner for their performance for " * * all partners are liable * * * jointly for all * * * obligations of the partnership." New York Partnership Law, McKinney's Unconsol. Laws, c. 39, § 26. It was also correct in holding that even though the withdrawal of Louis in September 1944 had the legal consequence of a dissolution of the partnership, § 60, " * * * the dissolution of the partnership does not of itself discharge the existing liability of any partner." New York Partnership Law, § 67. See also 49 Am.Jur., Partnership, § 201 (1942).

■ But in partnership law the establishment of the personal unlimited liability of the general partner requires a legal proceeding in which (whether local practice requires him to be named personally or not) the individual partner thus pursued is personally served with process or notice. This is so because he must have an opportunity to contest the claim on its merits. That is not to say that either here in the administrative proceeding, or generally in a lawsuit, it is essential in order to bind partnership property alone that the partners be individually named instead of the entity being treated as the party. The universality of these principles is vividly illustrated by the standards applied in New York where this partnership was principally domiciled and in Florida where Louis now lives. Section 222–a of the New York Civil Practice Act expressly permits suits against a partnership as an entity. But New York law accords with that generally applied, 40 Am.Jur. Partnerships, §§ 447–449 (1942); 68 C.J.S. Partnership §§ 235e–236, 375c (1950); 100 A.L.R. 994; 136 A.L.R. 1071; that a judgment validly obtained against the firm by suit against the entity is effective against partnership property only, and the individual property of partners not personally served is not subject to lien or execution in satisfaction of it. This is carefully spelled out. "An execution upon such judgment may be collected out of the real and personal property of the partnership, and out of the real and personal property of the persons summoned, whose names shall be indorsed on the execution." New York Civil Practice Act § 222–a. This is reflected further in Sections 1197–1201 of the Act, dealing with joint debtors. Section 1199 concludes, "An execution against property issued upon such a judgment [against joint debtors in which not all were summoned] shall not be levied upon the sole property of such a defendant [one not summoned]; but it may be collected out of the real and personal property owned by him

---

2. We assume, without deciding, that the retrospective determination in 1945 and 1946 that there were excess profits subject to refund did not create new obligations but were merely liabilities incident to the 1943–1944 contracts. It might be argued, of course, that since the payments made by the Government to the contractor in 1943 and 1944 were pursuant to the contract and the contractor was not then subject to any duty of refund, these were post-dissolution obligations for which Louis might have a liability, but not on the basis of the usual rule.

jointly with the other defendants who were summoned, or with any of them, and out of the real and personal property of the latter, or of any of them." These and many other New York cases affirm that if the personal property of the individual partner is sought to be reached, he must have been served. Cohn v. King, Sup.1918, 172 N.Y.S. 288, affirmed 187 App.Div. 969, 175 N.Y.S. 897; Mandell v. Moses, 3d Dept.1924, 209 App.Div. 531, 205 N.Y.S. 254, affirmed 239 N.Y. 555, 147 N.E. 192; Magovern v. Robertson, Sup.1891, 59 Hun 627, 14 N.Y.S. 114 affirmed 129 N.Y. 636, 29 N.E. 1031.

This is likewise the clear state of the law in Florida, from which this appeal comes and in which State Louis resides and presumably owns property exposed to a judgment lien or levy. Florida Brewing Company v. Sendoya, 1917, 73 Fla. 660, 74 So. 799; Thomas v. Nathan, 1913, 65 Fla. 386, 62 So. 206; First Nat. Bank of Orlando v. Greig, 1901, 43 Fla. 412, 31 So. 239.

We think these principles have direct application here. For an administrative proceeding before the Renegotiation Board is substantially the same as a court suit brought against the entities. And the civil action commenced by the Government in the District Court of Florida against Louis and others is substantially the same as ancillary proceedings for satisfaction of the court judgment out of the individual assets of a partner.

Of course, Congress did not require that the notice, see note 1, supra, be addressed and served on each partner of the contractor if the contractor was a partnership. The Act, much like Section 222–a of the New York Civil Practice Act, and see also F.R.Civ.P. rule 17(b), 28 U.S.C.A.; Taormina Corp. v. Escobedo, 5 Cir., 1958, 254 F.2d 171, clearly reflects a practical purpose to treat the contractor as a business entity. But having said this, we do not in any sense feel that Congress meant to attach to that notice civil sanctions beyond the entity.

That is probably the crux of this matter. For what the Government claims here is that the Act permits it to treat the contractor as an entity for notice, but it does not want to accept the limitations which the law generally attributes when the entity, not the individuals, is pursued. It wants the entity, not to obtain entity sanctions, but to get rights against property of individuals.

 It is apparent from the statute that the object was to precipitate conferences in which, by discussion and negotiation, an agreement would be reached, and failing that a peremptory order would issue. By its nature this called for notice so that this process could be intelligently carried on. Since the administrative order is final and binding absent a Tax Court appeal, Congress was assuredly aware that the orders might have substantial impact upon individuals comprising contractors. As it meant to commit decisions having such awesome finality to the administrative agency, we think it clear that Congress did not mean to dispense with that personal notice which the law generally requires where a personal liability above and beyond that of the entity is sought to be imposed. This construction also effectuates the basic approach to the Renegotiation Act by the Court in Lichter v. United States, 1948, 334 U.S. 742, 754, 68 S.Ct. 1294, 1301, 92 L.Ed. 1694, 1709. "We re-emphasize that, under these conditions, there is great need both for adequate channels of procedural due process and for careful conformity to those channels." Magnolia Petroleum Company v. Carter Oil Company, 10 Cir., 1954, 218 F.2d 1, 6; Parker v. Lester, 9 Cir., 1955, 227 F.2d 708, 709, 716.

To put it another way, if recoupment was to come out of partnership assets only, notice by registered mail to the contractor in the trade name and at the trade address was sufficient. But if the Government desired to recoup the excess profits out of the personal non-partnership property of individual partners, it would have to give such individuals at least the kind of notice given to the entity. That would not have been unrea-

sonable or administratively difficult. For in this case, at least, it is patent that the Government in these administrative proceedings knew not only of the existence of the partnership, but of each of the partners and their residence.[3]

■ The District Court was correct in holding that notice to the entity bound the entity and that the entity was an authorized agent on behalf of all constituent partners (including Louis) in the renegotiation proceedings. But this action as an imputed agent bound only partnership assets and the individual partners with respect to partnership assets. The entity or the surviving partners were no more the agent of the withdrawn partner in the administrative proceedings than either would have been in a court suit where individual partners were not served. The Court, therefore, should not have granted the Government's motion for summary judgment. On the contrary, it should have granted the summary judgment sought by Louis.

■ The cause must, therefore, be reversed and remanded with directions to enter a judgment[4] for the Government against Louis insofar as, but only so far as, partnership assets; and for Louis with respect to individual property not property of the partnership. The Court

shall also take such further and other proceedings as are consistent with this opinion.

Reversed and remanded with directions.

**3.** The order dated April 7, 1945, covering the year 1943 of the War Contracts Price Adjustment Board, United States Maritime Commission, recites at its outset: "Pursuant to authority duly delegated by the War Contracts Price Adjustment Board, a renegotiation proceeding was duly commenced with Louis Detrio, Sylvester A. Detrio, Anthony Detrio, all of Pascagoula, Mississippi, Felix T. Boylan, Nobert S. Glasscheib, both of New York, New York, Albert A. Detrio, of Maspeth, Long Island, New York and John J. Detrio, of Portland, Oregon, the above-named individuals being partners, doing business under the firm name and style of Consolidated Tile and Deck Coverings, maintaining their principal office at 101 Park Avenue, New York, New York (hereinafter called the 'Contractor') with respect to the aggregate of the amounts received or accrued by the Contractor under contracts with the Departments and subcontracts as defined in

the Renegotiation Act * * *." The order (March 12, 1946) for 1944 was substantially the same.

**4.** As the existence, nature, kind, value or location of partnership assets is not before us, and the question of the *amount* of the judgment to be satisfied out of partnership assets, if any, may later arise, we further hold that the imposition of interest was erroneous on motion for summary judgment. The parties stipulated with respect to questions of liability only. Imposition of interest involves discretion which, on the present record at least, calls for the weighing of conflicting inferences, not the least of which is why the Government, unfettered as it is by ordinary statute of limitations, may wait ten years before bringing suit. See United States v. Douglas, D.C. N.D.Fla., 1957, 151 F.Supp. 254; United States v. Star Construction Co., 10 Cir., 1951, 186 F.2d 666, 669.