39 F.3d 1176
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles H. P. DUELL, individually and as Class A limited
partner of Middleton Inn Associates, and on behalf
of Middleton Inn Associates, a South
Carolina Limited Partnership,
Plaintiff-Appellee,
v.
Robert M. HEIDENRICH, Individually and as General Partner of
2300 Associates, an Illinois Limited Partnership,
Class B Limited Partners of Middleton
Inn Associates, Defendant-Appellant,
and Middleton Inn Associates; Charles D. Ravenel;
Fredericj. Bartek; Annc. Draper, Defendants.
 No. 93-1532.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1994.
Decided Nov. 7, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, Chief District Judge. (CA-90-1851-2-2)
 ARGUED: W. Thomas Vernon, King & Vernon, P.A., Columbia, SC, for appellant. Joseph Rutledge Young, Jr., Young, Clement, Rivers & Tisdale, Charleston, SC, for appellee. ON BRIEF: Stephen P. Groves, Young, Clement, Rivers & Tisdale, Charleston, SC, for appellee.
 D.S.C.
 REVERSED AND REMANDED.
 Before MURNAGHAN, Circuit Judge, SPROUSE, Senior Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In the present diversity action, a creditor of a now-dissolved South Carolina limited partnership successfully sued one limited partner. The same creditor had previously sued ten other limited partners on virtually identical grounds and had won a sizeable jury verdict that would have fully satisfied the creditor's claims. The parties to the earlier action entered into a post-judgment settlement that purportedly failed to satisfy the creditor's claims. Because we conclude that the post-judgment settlement was collusive and manipulative and that the creditor's claims have actually been fully satisfied, we hold that the creditor cannot recover in the instant action. Therefore, we reverse.
 
 
 2
 * A
 
 
 3
 The present case arises from the dissolution of a failed limited partnership. Middleton Inn Associates ("the partnership" or "MIA") was a South Carolina limited partnership composed of: (1) a general partner; (2) a Class A limited partner, plaintiff-appellee Charles H. P. Duell; and (3) several dozen Class B limited partners, including defendant-appellant Robert M. Heidenrich (as the general partner of 2300 Associates, an Illinois limited partnership) ("Heidenrich").
 
 
 4
 When the partnership suffered financial difficulties in the mid 1980s, it borrowed money from Duell. Eventually, the partnership's debt to Duell reached a total of $1,237,570. Notwithstanding Duell's assistance, the partnership's finances continued to slide, until a majority of the Class B limited partners voted to dissolve the partnership. Duell threatened to sue any Class B limited partner who would not enter into a "Mutual Release" with him. Each Mutual Release released its signatories from debts, liabilities, claims, and encumbrances that the partnership and Duell may have had against each other. Most of the Class B limited partners acceded to Duell's demands and signed the releases. At least thirteen of the Class B limited partners, however, refused to do so.
 
 
 5
 In July 1988, ten of the Class B limited partners who had not executed Mutual Releases ("the Class B Litigants")[1] filed an action in federal district court against Duell, the general partner, and the partnership, alleging federal securities violations, RICO violations, and supplemental state-law claims arising out of the partnership's formation, operation, and collapse ("Egan v. Duell "[2]). Duell then filed an action in state court against the Class B Litigants, alleging that they owed him money both as a creditor of the partnership and as its Class A limited partner ("Duell v. MIA "[3]). Duell did not sue Heidenrich at that time, as they had entered into a "stand-still" agreement. In February 1990, the jury in Duell v. MIA rendered a verdict in favor of Duell and against the Class B Litigants in the amount of $1,650,662. Under the verdict, Duell recovered (1) as a creditor of the partnership, and (2) derivatively, in favor of the partnership, for the purpose of reducing the partnership's outstanding debts (to all of its various creditors, including but not limited to Duell). Judgment was entered, and no appeal was taken.
 
 
 6
 Duell moved for summary judgment in Egan v. Duell (the federal securities/RICO action) on the ground that the verdict in Duell v. MIA collaterally estopped the Class B Litigants from relitigating the same issues in the federal forum. The United States District Court for the District of South Carolina granted Duell's motion, and the Class B Litigants appealed.
 
 
 7
 After the Class B Litigants filed their appeal, but before it could be decided, Duell filed a $10 million malicious prosecution and abuse of-process action ("Duell v. Egan "[4]) against the Class B Litigants. Almost immediately thereafter, Duell, the partnership, the general partner, and the Class B Litigants reached a "global" compromise and settlement that resolved all of the pending cases between Duell and the Class B Litigants. See Egan v. Duell, 972 F.2d 339 (4th Cir.1992) (Table) (per curiam) (dismissing the appeal). Under the settlement, Duell received $1,275,638, of which $275,138 was purportedly allocated to the judgment that had been entered in Duell v. MIA and $1,000,500 was purportedly allocated to the pending malicious-prosecution suit, Duell v. Egan. As part of the settlement, Duell and each of the Class B Litigants entered into a "Limited Mutual Release" that expressly reserved any claims that Duell may have had against Heidenrich. Thus, the "global" compromise and settlement allowed the Class B Litigants to pay off a $1,650,662 jury verdict for only $1,275,638; and it allowed Duell to pursue the remaining Class B limited partners, including Heidenrich.
 
 B
 
 8
 Duell filed the present case against the partnership, its general partner, and three remaining Class B limited partners (Heidenrich and two others), asserting causes of action virtually identical to those that Duell had asserted against the Class B Litigants in Duell v. MIA. Two of the three codefendants settled. Duell's case against Heidenrich pro ceeded to trial in the United States District Court for the District of South Carolina. The jury, in a verdict on special interrogatories, awarded Duell judgment against Heidenrich in the amount of $1,237,570. Judge Houck reduced the verdict to $287,020, the amount of Heidenrich's negative capital account balance.[5]
 
 
 9
 Heidenrich moved for a directed verdict, for judgment notwithstanding the verdict, and for a new trial. The district court denied the motions, and Heidenrich timely appealed.
 
 II
 
 10
 Heidenrich has argued that Duell was not entitled to recover against him because Duell's claims had been fully satisfied by the state-court verdict of $1,650,662, which far exceeded the $1,237,570 that the partnership had owed Duell. Duell has countered that, in settling the state-court action, he did not receive full compensation amounting to a satisfaction of his creditor claims.[6]
 
 
 11
 Duell's creditor claims against the partnership totalled $1,237,570. As part of his "global" settlement with the ten Class B Litigants, Duell received $1,275,638. If the entire $1,275,638 settlement had been applied to the partnership's debt to Duell, it would have extinguished that debt entirely, and Duell would no longer have been a creditor of the partnership. In other words, his creditor claims would have been fully "satisfied." Under that scenario, the defense of satisfaction would bar Duell from successfully bringing a creditor claim against any other Class B limited partner, including Heidenrich.
 
 
 12
 The terms of the settlement, however, expressly did not apply the entire $1,275,638 to Duell's creditor claims. Rather, they apportioned only $275,138 of the settlement proceeds to partial payment of the jury verdict in Duell v. MIA and the remaining $1,000,500 to Duell v. Egan, the malicious-prosecution suit which Duell had brought against the Class B Litigants immediately prior to the compromise and settlement.
 
 
 13
 That apportionment significantly benefited the parties to the settlement (i.e., Duell and the ten Class B Litigants) at the expense of other parties who were not involved in the settlement (e.g., Heidenrich). The apportionment of the settlement proceeds benefited the Class B Litigants by providing them with a tax break: they could deduct from their income taxes the part of the settlement that was attributable to the malicious-prosecution suit, but not the part that was attributable to the partnership action. The apportionment also benefited Duell. Allocating only $275,138 to his creditor claims allowed him to retain his status as a creditor of the partnership--a status that would enable him to squeeze more money out of the three remaining Class B partners (including Heidenrich). Indeed, Duell's strategy of foregoing the $1,650,662 jury verdict and supplanting it with a $1,275,638 "allocated settlement" may already have reaped sizeable dividends. Heidenrich's two original codefendants settled with Duell. And, if the jury verdict in the present case were to stand, Duell would be entitled to collect from Heidenrich another $287,020.
 
 
 14
 Thus, here we have a clever--indeed, manipulative--compromise and settlement that benefited one set of limited partners at the expense of another set of limited partners who were not at the table when the settlement was being negotiated. Only one characteristic distinguished the ten Class B litigants from Heidenrich--they were at the table when the settlement was negotiated, and he was not. Therefore, the question presented on appeal is whether the terms of that settlement can defeat Heidenrich's defense of satisfaction.
 
 
 15
 As a general matter, we recognize that settlements are not subject to collateral attack. See Oglesby v. Attrill, 105 U.S. 605, 611 (1881); A.D. Juilliard & Co. v. Johnson, 259 F.2d 837, 844 (2d Cir.1958), cert. denied, 359 U.S. 942 (1959); Clarke v. Volkswagen of America, Inc., 419 F.Supp. 74, 78-79 (S.D. Iowa 1976); Albright v. R.J. Reynolds Tobacco Co., 350 F.Supp. 341, 348 (W.D. Pa.1972), aff'd, 485 F.2d 678 (3d Cir.1973), cert. denied, 416 U.S. 951 (1974).
 
 
 16
 In the context of lawsuits among limited partners, however, that general principle must give ground to a more specific rule of law: a judgment against one partner may not result in the conclusive determination of the personal liability of another partner, unless the latter partner was personally served with process or participated in the defense of the action. See Detrio v. United States, 264 F.2d 658, 661 (5th Cir.1959); see also Dillard v. McKnight, 34 Cal.2d 209, 214-17, 209 P.2d 387, 391-93 (1949); Restatement (Second) of Judgments Sec. 60 reporter's note (1982).
 
 
 17
 Heidenrich was not personally served with process in, and did not participate in the defense of, Duell v. MIA or Duell v. Egan. Hence, applying the above-stated rule of law, the judgment in Duell v. MIA could not have imposed upon him personal liability for any share of the $1,237,570 that the partnership owed to Duell. For similar reasons, we will not allow the post-judgment settlement of Duell v. MIA to determine conclusively Heidenrich's liability to Duell.
 
 
 18
 The settlement agreement and the attendant "Limited Mutual Releases" were designed precisely to keep Heidenrich liable to Duell. No party to the settlement had any interest in protecting Heidenrich's interests. Indeed, Duell had an incentive to do the opposite--to preserve his creditor claims against Heidenrich. Apparently, when the jury award against the Class B Litigants proved so generous as to exhaust Duell's creditor claims, he settled the case, post-verdict, for less money than it was worth precisely in order to "re-allocate" the damages and thereby to keep alive his action against Heidenrich and his two codefendants. We see no reason why one set of limited partners (Duell and the Class B Litigants) should be permitted to collude at the expense of another set of limited partners (Heidenrich and his codefendants). Therefore, we reverse the district court's judgment on the issue of satisfaction.
 
 
 19
 Our decision today comports with fundamental notions of due process and judicial economy. As a matter of due process, one partner-defendant should not be held liable for another partner's failed litigation. And, as a matter of judicial economy, a creditor-plaintiff should be encouraged, if not required, to join all similarly situated limited partners as defendants in the same suit, rather than suing them sequentially. Cf. Fed.R.Civ.P. 23(e) (requiring court approval for any compromise and settlement in a class action, in order to prevent the plaintiff from "buying off" the named representative defendant to the detriment of the absent class members).
 
 
 20
 We hold that Duell was not entitled to recover against Heidenrich because Duell's creditor claims had already been fully satisfied. Because of our resolution of the satisfaction issue, we need not address Heidenrich's other claims of error.
 
 
 21
 Accordingly, we reverse the judgment of the district court and remand the case with instructions to enter a judgment as a matter of law in favor of Heidenrich.[7]
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 [1]
 Heidenrich was not among the ten Class B Litigants
 
 
 [2]
 Egan v. Duell, Civ. Action No. 2:89-1497-2 (D.S.C.1991)
 
 
 [3]
 Duell v. Middleton Inn Assocs. , Civ. Action No. 88-CP-10-4018, later changed to Civ. Action No. 89-CP-10-2896-R (Charleston County Ct. of Common Pleas)
 
 
 [4]
 Duell v. Egan, Civ. Action No. 90-CP-10-5241 (Charleston County Ct. of Common Pleas)
 
 
 [5]
 Duell had agreed that Heidenrich's liability was limited to the deficit in his capital account. The revised verdict represented that deficit amount and comported with both the judge's instructions to the jury and the jury's expressed intentions
 
 
 [6]
 Duell also has argued that Heidenrich waived the affirmative defense of satisfaction when he failed to plead it in his answer. That argument has no merit. At trial, both Heidenrich and Duell introduced evidence relating to satisfaction. Therefore, the issue of satisfaction was tried by implied consent of the parties and was not waived. See Fed.R.Civ.P.15(b)
 
 
 [7]
 Nothing in our opinion today prevents the ten Class B Litigants from recovering against Heidenrich or any other partner, if appropriate