**VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Plaintiff–counter–defendant–Appellant,**

v.

**A.E. ROUSE & COMPANY, a Wyoming general partnership; B.M. Rouse & Company, a Wyoming general partnership; A.E. Rouse, husband; Betty M. Rouse, wife, Defendants–counter–claimants–Appellees.**

No. 96–15993.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1997.

Decided Aug. 11, 1997.

Mark I. Harrison, Bryan Cave, Phoenix, AZ, for plaintiff-appellant.

Amy Schwartz, Byrne, Beaugureau, Shaw, Zukowski & Hancock, Phoenix, AZ, and Richard Q. Nye, Richard Q. Nye, Ltd., Phoenix, AZ, for defendants-appellees.

Before: FARRIS and TASHIMA, Circuit Judges, and STAGG, Senior District Judge.[*]

FARRIS, Circuit Judge:

The Valley National Bank of Arizona obtained a default judgment in Arizona state court against the Varga Group, an Arizona general partnership. The Bank brought this suit to enforce its judgment against two general partners in the Varga Group, A.E. Rouse & Company and B.M. Rouse & Company, both Wyoming partnerships, and those partnerships' general partners. The district court granted summary judgment in favor of the defendants. The Bank appeals. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I.

## BACKGROUND

In 1985, the Varga Group, an Arizona general partnership comprised of Charles P. Varga, Schwan Properties, A.E. Rouse & Company and B.M. Rouse & Company, approached Valley National Bank to obtain financing for a real estate purchase. The Bank loaned the Varga Group 11.5 million dollars. The loan was secured by a deed of trust, and Charles Varga, A.E. Rouse, B.M.

Rouse, Joseph Schwan and Catherine Schwan each personally guaranteed the loan.

In 1987, the Varga Group and the guarantors defaulted on the loan. The Bank sued the Group and the guarantors to foreclose the deed of trust and for the remaining deficiency. The complaint did not name A.E. Rouse & Company or B.M. Rouse & Company as defendants and neither was served. The Varga Group and the guarantors answered and counterclaimed, arguing that the loan was not a loan, but a joint venture disguised as a loan to evade federal banking laws prohibiting the Bank from entering into joint ventures.

Prior to trial, the Varga Group filed for Chapter 11 bankruptcy. The Bank successfully moved to have the stay lifted, and foreclosed on its deed of trust. The Varga Group's bankruptcy proceeding was thereafter dismissed, and the Bank's suit against the Group was returned to the state trial court for adjudication.

The Rouses appeared at the trial individually, but no appearance was made on behalf of the Varga Group. Over the Rouses' objection, the trial judge entered default against the Group for failure to appear.

The case was tried to a jury, which found that the relationship between the Bank and the guarantors was a joint venture, not a loan, and that the Bank had breached the agreement. The jury awarded the Rouses and the Schwans $300,000 in damages for the breach.[1]

Notwithstanding the jury finding that the transaction at issue was a joint venture, the trial court held a default hearing and entered judgment against the Varga Group for $12,946,415.10. There was no appeal from this judgment.

The Bank, however, appealed from the jury verdict. The Arizona Court of Appeals upheld the jury's finding that the relationship between the Varga Group and the Bank was a joint venture. *Bank One, Arizona v.*

---

[*] The Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

1. The Rouses and the Schwans had also brought negligent misrepresentation and fraud claims against the bank. The jury found for the Rouses and the Schwans on their negligent misrepresentation claim, but awarded no damages. The jury found for the Bank on the fraud claim.

*Rouse,* 181 Ariz. 36, 887 P.2d 566, 569–70 (1994). The court refused, however, to enforce such an illegal agreement, and therefore vacated the damages awarded the Rouses and Schwans, and reversed the negligent misrepresentation verdict. *Id.* at 570–71.

Meanwhile, the Bank filed the present action in Arizona federal district court, seeking to enforce the default judgment against the Rouse partnerships and the Rouses individually. The Rouses returned to the state court, and on behalf of the Varga Group, moved to set aside the default judgment. The motion was denied, and the denial was affirmed on appeal. The parties then filed cross motions for summary judgment in the district court action.

The district court granted the Rouses' motion and denied the Bank's. The court refused to enforce the default judgment on public policy grounds, explaining that the court would not "permit a party who has engaged in an unlawful act, i.e., a bank acting as a joint venturer, to benefit from its wrongful agreement." Alternatively, the court held that the default judgment was not binding on the Rouse Partnerships because they had been neither served nor named in the underlying suit. Because the statute of limitations had run on an action against the Rouse Partnerships on the original debt, the district court reasoned, the Rouse Partnerships (and thus the Rouses) were entitled to summary judgment. The Bank appeals.

## II.

### STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Id.*

## III.

### DISCUSSION

#### A.

The Full Faith and Credit Act requires federal courts to give state court judg-

ments the same effect they would have in the state in which they were entered. 28 U.S.C. § 1738. A federal court may not refuse to enforce a valid state judgment on the ground that enforcement would violate some unarticulated federal public policy. Section 1738 "does not allow federal courts to employ their own rules ... in determining the effect of state judgments." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985)(quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1896–97, 72 L.Ed.2d 262 (1982)). "Absent a partial repeal of [the Act] ... by another federal statute, a federal court *must* give [a state] judgment the same effect that it would have in the courts of the State in which it was rendered." *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* — U.S. —, —, 116 S.Ct. 873, 876, 134 L.Ed.2d 6 (1996)(emphasis added). To the extent the district court refused to enforce the Arizona default judgment because it was against federal public policy to enforce a judgment predicated on an illegal contract, the district court erred.

This holds true despite the fact that the default judgment was inconsistent with the previously entered jury verdict. When a court is faced with inconsistent judgments, "it should give *res judicata* effect to the *last* previous judgment entered." *Robi v. Five Platters, Inc.,* 838 F.2d 318, 328 (9th Cir.1988)(quoting *Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1530 (9th Cir.1985)(emphasis in original)); *see Casillas v. Arizona Dep't of Economic Security,* 153 Ariz. 579, 739 P.2d 800, 802 (App.1986)(applying "last in time" rule as Arizona law). "The formal rationale behind this rule is that the implicit or explicit decision of the second court to the effect that the first court's judgment is not *res judicata,* is itself *res judicata* and therefore binding on the third court. The decision is not binding because it is correct; it is binding because it is last." *Americana Fabrics,* 754 F.2d at 1530. "If an aggrieved party believes that the second court erred in not giving *res judicata* effect to the first court's judgment, then the proper

redress is appeal of the second court's judgment, not collateral attack in a third court." *Id.* (citations omitted).

The Rouses argue that the last in time rule only applies where two different courts enter inconsistent judgments in two separate actions, not where, as here, the two inconsistent judgments are entered by the same court in the same action. The Rouses offer no authority supporting their position, which we reject. The rationale behind the rule applies equally where the second judgment is entered by the same court that entered the first; the second judgment contains an implicit decision that the first judgment is not *res judicata* which is itself *res judicata*, binding on a subsequent court.

Assuming the state trial court erred in not giving the Group the benefit of the jury verdict, that error formed the basis for a direct appeal, not a collateral attack. Erroneous or not, the default judgment was a valid, final judgment of a court of competent jurisdiction. It controlled over the previously entered jury verdict. The district court was obligated to enforce it.

To say that the district court was required to enforce the judgment, however, answers only half of the question. The remaining half is whether the default judgement is binding on the Rouse Partnerships, which were neither named nor served in the underlying lawsuit. The district court answered this question of Arizona partnership law in the negative.

### B.

In Arizona, partners are "liable jointly and severally for all partnership debts." Ariz.Rev.Stat. § 29–215. Because partners are jointly and severally liable, they may be sued in successive actions for the same claim. *Faber v. Althoff*, 168 Ariz. 213, 812 P.2d 1031, 1038 (App.1990).

But that does not mean that a judgment against the partnership, or against an individual partner, may be enforced against partners who were not parties to an action. At the time the default judgment was entered, Ariz.Rev.Stat. § 29–104 provided in full:

> In actions against partners, the summons and complaint may be served upon one partner, and such service shall authorize a judgment against the partnership and against the partner actually served.

Ariz.Rev.Stat. § 29–104 (West 1989).[2] As the language of the statute makes clear, in an action against a partnership, judgment is not authorized against unserved partners. This comports with two general common law principles: (1) that a partnership is a party to an action does not in itself make the partners parties, *see Lava Shadows, Ltd. v. Johnson*, 121 N.M. 575, 915 P.2d 331, 332–33 (App.1996)(collecting cases); and (2) a judgment may not be entered against one not a party to an action, *see Quine v. Godwin*, 132 Ariz. 409, 646 P.2d 294, 298 (App.1982). The latter principle is a matter of procedural due process-thus a contrary rule would raise constitutional problems. *See, e.g., Nisenzon v. Sadowski*, 689 A.2d 1037, 1048 (R.I.1997)("To the extent the judgment purports to bind the unnamed Park City partners in their individual capacities without their having been afforded notice and an opportunity to be heard, it is void as violative of their due process rights."); *Duncan, Inc. v. Head*, 519 So.2d 1305, 1308 (Ala.1988)("In an action on a judgment, one may not obtain relief broader than the judgment sued on. The partners must have due process of law."); *Foster Lumber Company, Inc. v. Glad*, 303 N.W.2d 815, 816 (S.D.1981)("due process requires personal service on a partner to bind his individual assets"); *see also Detrio v. United States*, 264 F.2d 658, 660 (5th Cir.1959)("Undoubtedly the partnership law that requires personal service on a partner to bind his individual assets is required by concepts of procedural due process.").

The Bank acknowledges that it neither named nor served the Rouse Partnerships in its suit against the Varga Group and the guarantors. It argues, however, that the default judgment against the Varga Group

---

**2.** The statute was amended in 1994 to add provisions concerning limited liability partnerships. *See* Ariz.Rev.Stat. § 29–104 (West Supp.1996).

The quoted language regarding general partnerships remains unchanged in Ariz.Rev.Stat. § 29–104(A).

may be enforced against the Rouse Partnerships and the Rouses because the Rouses had notice of the suit and could have defended the Varga Group, but chose not to. The Bank relies on the Restatement (Second) of Judgments § 60, which provides in pertinent part:

> (1) A judgment in an action by an injured person against a partner upon an obligation or liability incurred in the course of partnership business:
>
> * * *
>
> (b) if in favor of the injured person:
>
> * * *
>
> (ii) renders the property of the partnership subject to execution to satisfy the judgment but is not otherwise binding on a partner who was not a party to the action unless he controlled or participated in controlling the defense of the action, or was given notice of an opportunity to defend the action

The Bank's reliance on the Restatement is misplaced. What the drafters of the Restatement meant when they suggested that an unnamed, unserved partner who participates in a defense of the partnership may be "bound" by a judgment against the partnership is that such a partner may be collaterally estopped from relitigating decided issues in a subsequent litigation, not that the partner's participation in the defense of the partnership somehow converts a judgment against the partnership into a judgment against the partner.

The cases relied upon by the Bank bear this out. In *Krofcheck v. Ensign Company,* 112 Cal.App.3d 558, 169 Cal.Rptr. 516 (1980), the plaintiff obtained a judgment against a partnership in Utah, which he sought to enforce against one of the partnership's partners in California. *Id.* at 560–61, 169 Cal. Rptr. 516. The partner had been neither named nor served in the Utah action, but had allegedly actively participated in the defense. *Id.* at 561–62, 567, 169 Cal.Rptr. 516. The plaintiff argued that his Utah judgment was enforceable against the partner under the Restatement (First) of Judgments § 84, which provides, in pertinent part, that:

> A person who is not a party but who controls an action ... is bound by the adjudications of litigated matters as if he were a party ...

The California court rejected the argument, holding that while "a nonparty who controls litigation may be collaterally estopped in respect to an issue which is litigated therein," control does not render a nonparty liable on the judgment against the partnership itself. *Id.* at 567, 169 Cal.Rptr. 516. The court explained:

> If a timely action were brought in California against [the partner] to enforce his obligation as a general partner to pay the damages resulting from the partnership's breach ... a finding that he controlled the Utah litigation would justify collaterally estopping [him] from denying the partnership's breach and the damages thereby resulting. But no such California action has been brought.

*Id.* at 568, 169 Cal.Rptr. 516. Rather, the plaintiff had attempted to sue the partner on his judgment against the partnership. This, the California court concluded, he could not do, notwithstanding the partner's alleged control of the Utah litigation. *Id.*

Likewise, in *Brunsoman v. Seltz,* 414 N.W.2d 547 (Minn.App.1987), also relied upon by the Bank, the plaintiff obtained a judgment against a limited partnership, which he sought to enforce against one of the limited partnership's general partners who had not been named in the suit, but who had participated in the defense. *Id.* at 549. The court refused to enforce the judgment against the unnamed partner because "due process prohibits the enforcement of a judgment against a person who had no opportunity to defend on the question of liability." *Id.* Instead, the court invoked the doctrine of collateral estoppel, binding the partner in the subsequent action to the fact of the partnership's liability. *Id.* at 550–51.

As these cases demonstrate, the fact that a partner participated, or could have participated, in the defense of his partnership does not convert a judgment against the partnership into a judgment against the partner. At most, the partner may be collaterally estopped from relitigating in a subsequent

suit on the original debt issues actually litigated and necessarily decided in the suit against the partnership.

The Bank also relies on *Clogher v. Winston and Strawn,* 181 Ariz. 372, 891 P.2d 240 (App.1995), for its argument that the Rouse Partnerships are subject to the judgment against the Varga Group. Language in *Clogher* does seem to support the Bank's position. *See id.* at 242 ("Should appellants prevail in establishing liability against the partnership, it follows that the assets of the partners are jointly and severally liable for any liability imposed, regardless of whether the partners were named in the original lawsuit."). But the question of a partner's individual liability for a judgment against the partnership was not before the *Clogher* court. In *Clogher,* the trial court dismissed the plaintiff's suit against a partnership before trial because the suit did not name the individual partners, the partners could not be added to the suit under the applicable statute of limitations, and, in the court's opinion, a partnership could not be sued in its own name. *Id.* at 241. The question facing the *Clogher* court on appeal was "whether a partnership may sue or be sued in its own name." *Id.* at 242. Because no judgment had been entered against the partnership, the court's discussion of whether the individual partners would be liable for such a judgment is dicta, which comports with neither Arizona partnership law nor notions of procedural due process.

■ We hold that the judgment against the Varga Group can not be enforced against the Rouse Partnerships, or against the Rouses individually as partners of those partnerships, because the Rouse Partnerships were neither served nor named in the underlying lawsuit. The Bank's only recourse against the Rouse Partnerships was to bring an action against them on the original debt. The Bank did not bring such an action, nor can the action it filed be characterized as such *post hoc* because the statute of limitations for such an action expired more than five months before the Bank filed its complaint in the district court. *See* Ariz.Rev.Stat. § 33–

814(A)(requiring a deficiency action be brought within ninety days after the trustee's sale of the trust property).[3] Because the Bank cannot enforce the default judgment against the Rouse Partnerships, and a suit against the Partnerships on the original debt is barred by the statute of limitations, the Rouse Partnerships, and therefore the Rouses, were entitled to summary judgment.

AFFIRMED.

---

**3.** It is undisputed that the ninety day period for the filing of a deficiency action expired on February 25, 1991. The Bank filed the present action in the district court on August 7, 1991.