ROBERT WARNER ET AL. *v.* JONATHAN J.
LANCIA ET AL.
(AC 15268)
(AC 15507)

O'Connell, Foti and Hennessy, Js.

Argued December 5, 1996—officially released August 12, 1997

*Richard E. Hayber*, with whom were *Vincent Simko* and, on the brief, *Ebrahim Dehghani*, for the appellants (defendant Jeannette M. Kordiak et al.).

*Thomas W. Ude, Jr.*, with whom was *Edward B. Winnick*, for the appellees (plaintiffs).

*Opinion*

O'CONNELL, J. The defendants Jonathan Winslow and Jeannette M. Kordiak[1] appeal from a summary judgment rendered in favor of the plaintiffs.[2] The defendants

---

[1] The defendants are Jonathan J. Lancia, Winslow and Kordiak, executor of the estate of Steven Kordiak, an original defendant who died during the pendency of the action. Lancia was defaulted for failure to appear in the trial court and did not participate in this appeal. Winslow and Kordiak filed separate appeals, which were consolidated by this court. Practice Book § 4004 (b). We refer in this opinion to Winslow and Kordiak as the defendants.

[2] The plaintiffs are Robert Warner, James Warner, Vernon Warner and Peter Panaroni.

claim that the trial court improperly (1) substituted a deceased partner's executrix as a party defendant, (2) granted summary judgment, and (3) awarded prejudgment interest. We affirm the trial court's judgment.

In this case, the plaintiffs sought to obtain a judgment against individual general partners of Laurel Associates. In 1991, the plaintiffs obtained a judgment against the partnership in the amount of $150,000 plus interest, based on a claim for a deposit given in connection with a real estate transaction. The defendants in the present action moved to intervene in the 1991 action against the partnership. Their motion was denied, and they did not appeal the denial.

After a property execution against the partnership was returned unsatisfied, the plaintiffs commenced the present action against the general partners of Laurel Associates, claiming that they were jointly and severally liable for the 1991 judgment against the partnership.

While this action was pending in the trial court, the defendant Steven Kordiak died, and Jeannette Kordiak was appointed executrix of his estate. Additional facts are included in the analysis of each issue.

I

SUBSTITUTION OF EXECUTRIX

The defendants first complain that the trial court improperly granted the plaintiffs' motion to substitute Jeannette Kordiak, executrix of the estate of Steven Kordiak, as a party defendant.

The record discloses that the defendant Steven Kordiak died on April 7, 1992, about four months after the initiation of this action. On September 14, 1992, his widow, Jeannette Kordiak, was appointed executrix of his estate. On January 28, 1994, the plaintiffs moved to substitute her, in her fiduciary capacity, as a party

defendant. In their motion, the plaintiffs alleged that they had never received written notification of Steven Kordiak's death. The trial court, *Ripley, J.*, found that there was good cause to grant the motion and did so on February 28, 1994.

We commence our analysis by noting that this issue does not pertain to the defendant Winslow. The case against him could have proceeded regardless of whether Kordiak's executrix was ever substituted as a party defendant. See *Bundy* v. *Williams*, 1 Root (Conn.) 543 (1793); General Statutes § 52-600.[3] Winslow is not aggrieved by the trial court's decision because he had no personal or legal interest that was affected. Thus, Winslow could not prevail on this claim. We will consider the claim, therefore, only insofar as it affects the defendant Jeannette Kordiak as executrix of her late husband's estate.

Although at common law the death of a party abated an action; *Barton* v. *New Haven*, 74 Conn. 729, 730, 52 A. 403 (1902); by virtue of General Statutes § 52-599,[4]

---

[3] General Statutes § 52-600 provides: "If there are two or more plaintiffs or defendants in any action, one or more of whom die before final judgment, and the cause of action survives to or against the others, the action shall not abate by reason of the death. After the death is noted on the record, the action shall proceed."

[4] General Statutes § 52-599 provides in relevant part: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. *If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent,* and, upon due service and return of the order, the action may proceed. . . ." (Emphasis added.)

this cause of action survives Steven Kordiak's death. The defendant Jeannette Kordiak focuses on General Statutes § 52-599 (b), which provides that in the event of a defendant's death, "the plaintiff, within one year after receiving written notification of the death, may apply to the court in which the action is pending, for an order to substitute the decedent's executor or administrator in the place of the decedent . . . ." She argues that, as used in this statute, the word "may" is mandatory and, therefore, the trial court lacked authority to grant substitution after expiration of one year, even upon a finding of good cause to do so.

Kordiak bases her argument on a 1987 change in the statute. Prior to the 1987 amendment, the relevant portion of § 52-599 (b) allowed a plaintiff one year from the date of a decedent's death to seek substitution of the fiduciary. In *Dorsey* v. *Honeyman,* 141 Conn. 397, 400, 107 A.2d 260 (1954), the Supreme Court, following a line of cases going back to 1904,[5] held that even after expiration of the statutory time period, the trial court had discretion to order substitution upon a showing of good cause.

The 1987 amendment, Public Acts 1987, No. 87-237 (b) (P.A. 87-237), changed the one year starting date from the date of death to one year from receipt of written notice of death by the plaintiff. Although Kordiak presented several arguments as to why she believes the legislature made the change, her arguments are bereft of any supporting citation to legislative history. In *Schoolhouse Corp.* v. *Wood,* 43 Conn. App. 586, 684 A.2d 1191 (1996), cert. denied, 240 Conn. 913, 691 A.2d 1079 (1997), this court considered a late motion for substitution of a fiduciary in a case arising subsequent to P.A. 87-237 and followed a "good cause" standard. Although this was a tacit recognition that P.A. 87-237

---

[5] *Hatch* v. *Boucher,* 77 Conn. 347, 350, 59 A. 422 (1904).

did not change the existing law, whether a change had been made was not the focus of the *Schoolhouse Corp.* decision. In order that there be no uncertainty in the law, we undertake such an analysis at this time.

We are furnished no reason to believe that when the legislature enacted P.A. 87-237 (b), it intended to change anything other than the starting date of the one year period. This construction is consistent with the presumption that an amendatory act does not change the existing law further than is expressly declared or necessarily implied. *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 63, 392 A.2d 491 (1978). Furthermore, when the legislature amends a statute, it is presumed that it was aware of long-standing judicial decisions interpreting former versions of the statute. *Faraday* v. *Dube*, 175 Conn. 438, 443, 399 A.2d 1262 (1978). Thus, we presume that the 1987 legislature was aware that the courts had construed this statute to allow trial courts discretion to permit late substitution of fiduciaries upon a showing of good cause.

Accordingly, we are not persuaded that the 1987 amendment to § 52-599 (b) was intended to abolish the long-standing judicial discretion to allow substitution of a fiduciary, at any time, upon a showing of good cause.

We turn now to the question of whether, under the circumstances of this case, the trial court properly determined that there was good cause to permit substitution of Kordiak as a party defendant. "Good cause is defined as a substantial reason amounting in law to a legal excuse for failing to perform an act required by law [and] [l]egally sufficient ground or reason." (Internal quotation marks omitted.) *Schoolhouse Corp.* v. *Wood*, supra, 43 Conn. App. 591. In other applications, the Supreme Court has held that "the trial court is to exercise broad discretion in determining whether good cause exists in a given case." *Berry* v. *Loiseau*, 223

Conn. 786, 800, 614 A.2d 414 (1992); *Rokus* v. *Bridge-port*, 191 Conn. 62, 72, 463 A.2d 252 (1983); *Clemens* v. *Harris*, 120 Conn. 111, 113–14, 179 A. 334 (1935). Thus, we analyze this claim to determine if the trial court abused its broad discretion in allowing substitution of the executrix.

"Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted). *DiPalma* v. *Wiesen*, 163 Conn. 293, 298–99, 303 A.2d 709 (1972). The trial court's discretion "should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 575, 620 A.2d 118 (1993).

The record here discloses that on February 9, 1993, the plaintiffs filed a request for leave to file a substitute complaint, in which they intended to effect a substitution of the executrix for her deceased husband.[6] Although this was an incorrect pleading to achieve the intended result, the defendants did not object and, in fact, shortly thereafter, they filed a request to amend in which they sought to add an additional special defense. Their request was purportedly filed by "the defendants

---

[6] The plaintiffs requested leave to file the substitute complaint "for the reason that the death of the defendant, Steve Kordiak, and the appointment of Jeannette M. Kordiak, as executrix of the Estate of Stephen M. Kordiak, makes said filing and substitution necessary at this time."

Steven Kordiak and Jonathan Winslow." Although the authority of Kordiak's counsel had expired with his death, the same counsel continued to act as if he had authority to defend the case long after Steven Kordiak's death and long prior to the filing of an appearance on behalf of the executrix. This conduct caused the plaintiffs to believe that defense counsel had authority to act for the executrix and were defending the case on her behalf. The plaintiffs reasonably believed that, as a result of their February 9, 1993 request to file a substitute complaint, the substitution had in fact occurred.

Kordiak does not claim any prejudice from the late substitution of February 28, 1994, because she responded to the request to leave to file a substitute complaint in 1993. We recognize that although the absence of prejudice without more may not constitute good cause; *General Accident Ins. Co.* v. *McGee*, 33 Conn. App. 626, 637 A.2d 792 (1994); it may be taken into consideration.

The trial court properly examined the totality of the circumstances, which showed that a proper motion to substitute the executrix had not been filed principally because the defendants' counsel had proceeded to defend the case for more than one and one-half years after the last date on which they could have been acting for the decedent. Because the defendants had not objected to the plaintiffs' request for leave to file a substitute complaint, albeit an improper pleading to achieve the intended result, the plaintiffs reasonably believed that the executrix had become a party. By granting the later and proper motion, the trial court merely clarified that the parties had proceeded as if the substitution had occurred when the defendants did not object to the naming of the executrix as a defendant in the substitute complaint.

We conclude that, in the circumstances of this case, the trial court could reasonably have found that there was good cause to grant the plaintiffs' motion to substitute the executrix of Steven Kordiak's estate as a party defendant.

## II

## SUMMARY JUDGMENT

The trial court rendered summary judgment for the plaintiffs in the amount of $247,814.84, which included prejudgment interest from July 26, 1991, the date of the partnership judgment, to September 15, 1995, the date of the judgment in the present action. Summary judgment is a method of resolving litigation when "pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 450, 627 A.2d 1329 (1993). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather, to determine whether any such issues exist." *Cortes* v. *Cotton*, 31 Conn. App. 569, 575, 626 A.2d 1306 (1993). "[I]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Johnson* v. *Meehan*, 225 Conn. 528, 535, 626 A.2d 244 (1993). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . ." (Internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990).

In this case, the defendants' special defenses raised issues of law and questions of fact that had not been

previously litigated in the action against the partnership. In their summary judgment motion, the plaintiffs claimed that the defendants were bound by the factual findings made in the partnership suit, and therefore, in this case, they need prove only that the defendants were partners in Laurel Associates.

The defendants objected to the motion for summary judgment on due process grounds, arguing that the judgment against the partnership could not bind them because they were not parties in the partnership litigation. The defendants also contended that, because the partnership agreement required majority consent for a transaction that exceeded $5000 and such consent was lacking, that the transaction underlying the partnership judgment was in violation of the partnership agreement and could not bind them.

The trial court held that if "the defendants are found to be partners of Laurel Associates for purposes of the judgment debt, then summary judgment should be entered in favor of the plaintiffs as a matter of law." The theory of the trial court's ruling was that, once a judgment was rendered against the partnership, the plaintiffs need prove in a subsequent suit against individual partners only that they were general partners at the relevant times of the 1991 lawsuit. The defendants do not dispute that they were general partners at all relevant times.

## A

### Collateral Estoppel

The defendants focus on the liability of the partnership itself and attempt to relitigate the issues determined in the prior action. The plaintiffs rely on *Dayco Corp.* v. *Fred T. Roberts & Co.*, 192 Conn. 497, 472 A.2d 780 (1984). In *Dayco Corp.*, an arbitration proceeding was instituted against a partnership only; the two individual partners were not named in the proceeding, and

only one of them participated in it. Id., 501. When the arbitration award against the partnership was confirmed by the Supreme Court and remained unsatisfied by the partnership, Dayco Corporation instituted suit to enforce the judgment against each partner. Id., 504. The Supreme Court held that "[w]hen the arbitration award was reduced to judgment the joint obligation of the parties was conclusively established." Id., 504. To hold otherwise would allow the partners to escape liability for the partnership debt in violation of General Statutes § 34-53.[7]

*Dayco Corp.* is directly on point. See also *14th RMA Partners* v. *Reale*, 100 F.3d 278 (2d Cir. 1996). The unappealed judgment against the partnership in July of 1991 conclusively established the partnership liability to the plaintiffs. Despite the Supreme Court's reasoning in *Dayco Corp.*, the defendants argue that they should be able to relitigate the issues decided in the first case because of the doctrine of privity. The fallacy in this argument arises from the doctrine of collateral estoppel, as applied to persons in privity with parties to the original judgment.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; internal quotation marks

---

[7] General Statutes § 34-53 provides in relevant part: "[A]ll partners are liable: (A) Jointly and severally for everything chargeable to the partnership under sections 34-51 and 34-52; (B) jointly for all other debts and obligations of the partnership . . . ."

omitted.) *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 296, 596 A.2d 414 (1991). "Collateral estoppel may be invoked against a party to a prior adverse proceeding *or against those in privity with that party.*" (Emphasis added.) Id., 303. The transcript of oral argument on the summary judgment motion contains a concession that the defendants are in privity with the partnership.[8]

The defendants contend that they were not in privity with the partnership, and, therefore, the doctrine of collateral estoppel does not apply to them. We do not agree. It is axiomatic that, as general partners, the defendants are deemed to be in privity with the partnership. The defendants here focus on the judgment against the partnership because that judgment established their liability. The defendants were aware of the 1991 action because they attempted to intervene therein as individuals. When they failed to appeal the denial of their motion to intervene in the 1991 action against the partnership, they were deemed to have accepted the judgment of the court. As individuals, the partners had no interest separate from their interest as general partners.

Furthermore, the defendants had the ability, as general partners, to control partnership affairs, including control of the litigation that resulted in the prior judgment. The defendants, in this case, were served with process in the prior action and it was their decision to leave the defense of that action to another partner until shortly before trial. At that point, these defendants became actively involved in the litigation and selected replacement counsel—the same counsel who represented them in the trial of the case now before this court. Their interests were, thus, properly represented in the action against the partnership.

---

[8] Excerpt from transcript of January 23, 1995, before *Hadden, J.*
"The Court: Well the partners are [in privity] to the partnership.
"[Defendant's Counsel]: Yes, Your Honor."

The defendants stress that they were in disagreement with another general partner about the conduct of partnership affairs. An intra-partnership dispute of this nature has no bearing on their liability to third parties.

We conclude that the defendants had a full and fair opportunity to litigate all issues in the prior action against the partnership. The trial court properly found that the defendants had raised no material issues of fact disputing the judgment that had been rendered against the partnership.

## B

## Due Process

The defendants next contend that rendition of summary judgment deprived them of due process of law. The defendants do not dispute the validity of the judgment against the partnership.[9] Their attorney fully and adequately litigated that case. As we explained in part II A of this opinion, the defendants in the present case were aware of the 1991 action and actually were involved in the litigation to a great extent.

The defendants rely on cases from other jurisdictions that they argue support their claim that, in partnership litigation, two trials of the same issues are mandated. These cases are inapposite. Some of them hold that the property of an individual partner may not be executed on unless the defendant was named as a defendant in the partnership action. See, e.g., *Duncan, Inc.* v. *Head,* 519 So. 2d 1305, 1307 (Ala. 1988); *Ryan's Furniture Exchange, Inc.* v. *McNarr,* 120 Fla. 109, 162 So. 483 (1935). In the present case, by contrast, the plaintiffs are not seeking to execute on the original judgment in which only the partnership was a named defendant.

[9] The defendants, on behalf of the partnership, did not appeal the judgment against the partnership.

Some of the other cases that the defendants cite allow a second trial to challenge the partnership's liability because of defects in the first action. *Prado North Residences, Ltd.* v. *Prado North Condominium Assn., Inc.*, 477 So. 2d 396 (Ala. 1985) (first suit in Georgia, defendants were residents of Alabama); *Detrio* v. *United States*, 264 F.2d 658 (5th Cir. 1959) (partner was completely unaware of action against partnership). None of those considerations are present in the appeal now before this court.

In *Dayco Corp.* v. *Fred T. Roberts & Co.*, supra, 192 Conn. 504, the Supreme Court held that a plaintiff may not levy on the property of individual partners on the basis of the judgment obtained against the partnership. If the judgment against the partnership remained unsatisfied, however, the Supreme Court concluded that it was appropriate to institute suit against individual partners to hold them liable for the judgment against the partnership. That is precisely the procedure followed by the plaintiffs in the present case.

The United States District Court, hearing a case implicating Connecticut partnership law, concluded that due process is not offended by holding a general partner liable for a judgment debt of the partnership even though the partner was not named in the underlying action. *Switzer* v. *National Housing Partnership, Ltd.*, 641 F. Sup. 150, 155–56 (D. Conn. 1986). A partner may not challenge the judgment against the partnership as it applies to him simply because he was not named in the suit. Id.

We conclude that rendition of summary judgment did not deprive the defendants of due process of law.

## III

### PREJUDGMENT INTEREST

The defendants complain that the trial court improperly awarded prejudgment interest in computing the

judgment in the present case. They base their argument on the faulty premise that the underlying judgment against the partnership did not impose liability on them. Earlier in this opinion we determined that the defendants' liability was established in the prior partnership judgment. Accordingly, the trial court correctly awarded prejudgment interest for the period between the date of the partnership judgment and the date of the judgment in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.