[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court are the motion of the defendant, Jose Torres, to allow the presence of a defense expert during mitochondrial DNA testing of certain evidence, and the state's motion to permit such testing to occur without defense observation. The court conducted hearings on these motions on November 19, 1998, December 18, 1998, and January 19, 1999.
The defendant faces charges arising from the alleged sexual assault and murder of a young girl in Willimantic. The state wishes to have trace evidence of suspected blood and semen, seized during the investigation of the child's death, genetically tested by the F.B.I. forensics laboratory to determine if the mitochondrial DNA detected, if any, matches that of the defendant as to the suspected semen and that of the victim as to the suspected blood.
The court resolved a preliminary issue of whether the court could consider counsel's representations, as opposed to the taking of testimony, in an earlier decision, State v. Torres, d.n. CR11-102538, Windham J.D. (December 21, 1998). Since that decision, the court has been informed that two more laboratories now perform mitochondrial DNA sequencing.
The specimens in question in this case are too scant for analysis by the more widely available nuclear DNA test, but mitochondrial DNA evaluation can be performed even on quantities as minute as the specimens to be scrutinized for this case. The specimens will be consumed by the test procedures.
The F.B.I. laboratory permits no outside observers to monitor its examinations. The Bode laboratory, which can also perform such tests, likewise allows no observers. The LabCorp laboratory will permit restricted observation by a preapproved observer.
Contamination is of great concern with respect to the specialized testing to be done on these specimens. That concern, along with the added stress and inconvenience of conducting such monitored analysis, is the reason why these laboratories refuse to permit outside observation. LabCorp has indicated that it would allow the defense to use Dr. T. Melton as an observer but has not yet established a protocol or set limits for such CT Page 390 observation.
The state argues that the F.B.I. laboratory should perform the testing for the following reasons. That laboratory has already received the specimens and extracted the DNA from them. That laboratory was the first to engage in forensic mitochondrial DNA examinations and established the accepted protocol to utilize this methodology. The F.B.I. technicians have testified in ten other criminal trials regarding mitochondrial DNA analyses and findings. That laboratory has previously conducted such examination of seminal stains. There is no fee charged to the state for this testing.
The defense contends that LabCorp offers a viable alternative to the F.B.I. facility while permitting the possibility of defense observation. It should be noted that LabCorp has never conducted mitochondrial DNA tests on seminal stain evidence, nor have its personnel testified in a criminal trial.
Practice Book § 40-9 establishes a general rule of discovery that, if scientific testing by one party will preclude further testing by the opponent, that opponent must be afforded the opportunity to observe or participate in the test. Section 40-9 also provides, however, that the court may dispense with this requirement for good cause.
"Good cause" means a "substantial reason amounting in law to a legal excuse" and a "legally sufficient ground or reason," Warnerv. Lancia, 46 Conn. App. 150, 155 (1997). "Good cause" excludes grounds that are made in bad faith or are arbitrary, irrational, unreasonable, or irrelevant, Gedney v. Board of Education,47 Conn. App. 297, 303 (1997).
The court finds good cause under § 40-9 to allow the mitochondrial DNA testing to be performed by the F.B.I. laboratory. Evidence that mitochondrial DNA extracted from the suspected seminal fluid discovered on the victim's clothing matches that of the defendant and evidence that the victim's mitochondrial DNA matched that of the suspected blood on the defendant's clothing would be critically important to the state's case. Similarly, exclusion of either subject as the source of the stains would weigh significantly in the defendant's favor. Establishing the admissibility and credibility of any results flowing from such testing is, therefore, of utmost importance to the state. CT Page 391
The state legitimately wishes to present a strong case for the inclusion of and weight to be accorded to such analysis. The state anticipates the possibility of a Porter hearing with respect to this examination. To the court's knowledge, mitochondrial DNA sequencing has not been the subject of a hearing under State v. Porter, 241 Conn. 57 (1997), which case adopted the standard for admissibility of novel scientific methodology set forth by the U.S. Supreme Court in Daubert v.Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).
Proffering testimony from the leader in this field of analysis for criminal cases rather than from a less experienced laboratory is a reasonable and relevant preference by the state. It forms a substantial reason to deviate from the general rule set forth in § 40-9.
Any prejudice to the defendant by not having its expert attend the testing appears less significant in this case than in others where the evidence will also be consumed by the test procedure. This is so because the F.B.I. laboratory has already extracted the DNA from the specimens. Also, the extent to which LabCorp will permit observation is, as of yet, undetermined. While the absence of prejudice alone does not constitute good cause, the amount of prejudice created is a factor to be considered by the court in determining whether good cause exists,Warner v. Lancia, supra, 157.
For these reasons, the state's motion is granted, and the defendant's motion is denied.
Sferrazza, J.