******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## MARCUS BORDIERE *v.* CIARCIA CONSTRUCTION, LLC, ET AL.
## (AC 41145)

DiPentima, C. J., and Keller and Harper, Js.

*Syllabus*

The plaintiff, M, brought an action against the defendant C, alleging, inter alia, that C had failed to make payments due on a mortgage note held by M. In May, 2009, after a trial, the trial court rendered judgment in favor of M. In July, 2013, M died and, subsequently, in July, 2017, his wife, P, as executrix of his estate, filed a motion to open the judgment and to substitute herself as the plaintiff, which the court denied. In October, 2017, P again filed a motion to substitute herself as the plaintiff, which the court granted. The court also vacated its prior order denying the July, 2017 motion to open and C appealed to this court. *Held* that P should not have been substituted as the plaintiff, as the trial court erred in premising its decision to open the judgment and to substitute P as the plaintiff on a statute (§ 52-107) which is inapplicable in instances in which a case has reached final judgment: the statutory language of § 52-107 clearly and unambiguously conveys the meaning that it is applicable only in cases in which an action is presently pending before the court, and not in cases in which a final judgment has been rendered, and, in the present case, there was no action pending before the court at the time it relied on § 52-107 to grant P's motion to substitute herself as the plaintiff, as P's motions were filed approximately four years after the death of M and eight years after final judgment was rendered in the present case; moreover, although P claimed that the right of survival statute (§ 52-599) provided the court with broad discretion to grant her untimely motion to substitute herself as the plaintiff on a showing of good cause, the record failed to support the plaintiff's claim that the court must have considered § 52-599 and conducted a good cause analysis, as it was clear from the language of the court's articulation, which did not cite to § 52-599, that it, instead, considered and relied on the standards provided in § 52-107 and our rule of practice (§ 9-18), both of which govern the intervention of nonparties, and, even if it were true that the court utilized its discretion under § 52-599 to grant P's untimely motion to open the judgment and to substitute herself as the plaintiff, neither P nor the court had pointed to any evidence that would support a finding of a reason amounting in law as a legal excuse for P's four year delay in seeking to participate in the present case.

Argued November 14, 2019—officially released February 25, 2020

*Procedural History*

Action to recover on a promissory note, and for other relief, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Pittman, J.*; judgment for the plaintiff; thereafter, the court, *Hon. Joseph M. Shortall*, judge trial referee, denied the motion filed by Patricia Bordiere, the executrix of the estate of Marcus Bordiere, to open the judgment and to be substituted as the plaintiff; subsequently, the court, *Hon. Joseph M. Shortall*, judge trial referee, vacated its prior order and granted the executrix' motion to be substituted as the plaintiff, and the defendant Michael Ciarcia appealed to this court. *Reversed*; *judgment directed*.

*Michael Ciarcia*, self-represented, the appellant (defendant).

*John C. Matulis, Jr.*, for the appellee (substitute plaintiff).

*Opinion*

HARPER, J. The self-represented defendant Michael Ciarcia[1] appeals from the judgment of the trial court granting the motion of Patricia Bordiere, the executrix of the estate of Marcus Bordiere, to open a prior judgment rendered in favor of the plaintiff, Marcus Bordiere, and to substitute herself as the plaintiff for purposes of enforcing the prior judgment by pursuing an after-discovered asset of the defendant. Specifically, the defendant claims that the trial court erred in relying on General Statutes § 52-107 to grant the executrix' motion to substitute herself as the plaintiff, as there was no case pending at the time she filed her motion to substitute and, thus, no case in which she could participate. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On December 20, 2007, the plaintiff filed a complaint against the defendant, alleging, inter alia, that the defendant had failed to make payments due on a mortgage note held by the plaintiff. On May 19, 2009, after trial, the trial court rendered judgment in favor of the plaintiff (judgment case). Subsequently, on July 11, 2013, the plaintiff died and, on August 7, 2013, his wife, Patricia Bordiere, was appointed as the executrix of his estate (executrix). Between May 19, 2009 and July 17, 2017, there were no postjudgment proceedings relevant to the judgment case.

The executrix filed an application in the Probate Court, dated April 13, 2017, to open the estate of the decedent in order to pursue an after-discovered asset owned by the defendant, to which the defendant objected.[2] The Probate Court granted her motion to open the estate on May 23, 2017.

Soon thereafter, on July 17, 2017, the executrix filed a motion in the Superior Court to open the judgment case and to substitute herself as the plaintiff. The defendant objected to this motion on July 19, 2017. On July 31, 2017, the court denied the motion to open the judgment case and to substitute the plaintiff, stating that: "The [executrix] cites no authority and the court knows of none that would permit the court to open this judgment [rendered] in 2009."

The executrix filed a new motion to substitute herself as the plaintiff, dated October 4, 2017, in which she stated: "The [executrix] is *not* seeking to open the judgment here—merely to be substituted as the party plaintiff for the [plaintiff], pursuant to her obligations as the executrix of his estate." (Emphasis in original.) The defendant objected to this motion on October 20, 2017. On November 6, 2017, the court granted the October 4, 2017 motion and also, under a separate order, vacated its prior order denying the July 17, 2017 motion to open

the judgment filed by the executrix. The court's order granting the October 4, 2017 motion provided: "The parties having failed to appear for argument at 9:30 a.m. today, as ordered by the court (*Wiese, J.*), the court has considered the matter on the [papers]. The motion is [granted]." The court's order vacating its prior order provided: "The court vacates its prior order and grants the motion to open for the limited purpose of substituting the executrix." The defendant filed a motion to reargue on November 16, 2017, which the court denied on November 21, 2017. This appeal followed.

On December 12, 2017, the defendant filed a motion for articulation in the trial court. On January 12, 2018, the court provided the following articulation: "The court granted the motion to open for the purpose of substituting [the executrix] as the party plaintiff because the action of the Probate Court in June, 2017, reopening the estate upon the petition of [the executrix] made it apparent that a 'complete determination' of the controversy before this court could not be had without the presence of [the executrix] as a party. See General Statutes § 52-107; Practice Book § 9-18."[3] The defendant filed a motion for further articulation on January 19, 2018, which was thereafter denied by the court on January 26, 2018.

On appeal, the defendant claims that the court erred in granting the executrix' October 4, 2017 motion and in vacating its prior denial of the July 17, 2017 motion filed by the executrix. The defendant essentially makes two distinct arguments in support of his claim on appeal that require us to conduct an inquiry into the language of our General Statutes.[4] First, the defendant argues that the court erred in premising its decision to open the judgment and to substitute the executrix as the plaintiff on § 52-107, which he argues is inapplicable in instances in which a case has reached final judgment. Second, the defendant argues that if the executrix wanted to substitute herself as the plaintiff, a timely motion pursuant to General Statutes § 52-599,[5] our right of survival statute, was the proper vehicle by which to do so. The defendant contends that, because the executrix' motion to substitute was filed outside the six month period provided for by the right of survival statute, the executrix effectively abandoned her ability to substitute as of right. The defendant further argues that the court's January 12, 2018 articulation did not provide a good cause analysis as contemplated by § 52-599 and, therefore, that the court could not utilize its discretion to grant the executrix' untimely motion on the basis of a showing of good cause. We address these two arguments in turn.

We first set forth the applicable standard of review. "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the

apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650–51, 931 A.2d 142 (2007).

The statute relevant to the defendant's first argument in support of his claim on appeal is § 52-107, which provides: "The court may determine *the controversy as between the parties before it*, if it can do so without prejudice to the rights of others; but, *if a complete determination cannot be had* without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment *will affect*, the court, on his application, shall direct him to be made a party." (Emphasis added.) The phrase "determine the controversy as between the parties before it" makes clear that, in order for this statute to have effect, the case in which a party seeks to intervene must be pending before the court at the time the court considers the motion to intervene pursuant to § 52-107. Additionally, the statute's use of the present tense form of the verb "determine," along with the phrase, "if a complete determination cannot be had," makes clear that, at the time the court considers the motion to intervene, the issues before it must not have already been determined, and, therefore, a judgment must not have been rendered. Further, the phrase, "which the judgment will affect," contemplates interests which the judgment, once it is rendered, will affect *in the future*. In no instance does the text of § 52-107 discuss the possibility of intervening after a case has been resolved. In sum, the statutory language clearly and unambiguously conveys the meaning that § 52-107 is applicable only in cases in which an action is presently pending before the court, and not in cases in which a judgment has been rendered. Therefore, we need not construe the statute by reference to its legislative history or purpose.

In the present case, there was no action pending before the court at the time it relied on § 52-107 to

grant the executrix' motion to substitute herself as the plaintiff. The executrix' motions to substitute herself as the plaintiff were filed on July 17 and October 5, 2017—approximately four years after the death of the plaintiff and eight years after the judgment was rendered in the case. During the eight years between the rendering of judgment and the executrix' motions, there was no case pending in the Superior Court. The last action in the judgment case—the rendering of judgment in favor of the plaintiff on May 19, 2009—was a final disposition as to all parties involved. The issues between the original parties, namely, the liability of the defendant and the amount owed to the plaintiff, had been determined and a final decree had been entered. Accordingly, on the basis of our interpretation of the clear and unambiguous language of § 52-107, as applied to the facts of the present case, we conclude that the executrix should not have been permitted to substitute as the plaintiff by way of intervening pursuant to § 52-107.

The defendant's second argument in support of his claim on appeal is that the proper vehicle for substituting as the plaintiff in this case would have been a motion to substitute pursuant to § 52-599, filed by the executrix within six months of the death of the plaintiff. According to the defendant, had the executrix filed a motion pursuant to § 52-599 within the prescribed time frame, she would have been able to revive the judgment case and to substitute as the plaintiff.[6] As the defendant explains, however, the executrix' motion—filed four years after the plaintiff's death—was untimely and, therefore, not in compliance with the right of survival statute.

In opposition, despite never having pleaded good cause in either of her motions filed in the trial court, the executrix contends that § 52-599 provided the court with broad discretion to grant her untimely motion on a showing of good cause. She argues that the court was aware of the revival of suit statute when it made its decision and, therefore, must have concluded that good cause existed to grant her motion. The defendant, however, argues that the court's articulation of its decision does not satisfy the requisite good cause analysis and, indeed, makes no reference to § 52-599 whatsoever. We agree with the defendant.

Our case law recognizes "good cause" in the context of § 52-599 as being defined as "a substantial reason amounting in law to a legal excuse for failing to perform an act required by law [and] [l]egally sufficient ground or reason." (Internal quotation marks omitted.) *Warner* v. *Lancia*, 46 Conn. App. 150, 155, 698 A.2d 938 (1997). Additionally, "the language of § 52-599 . . . has been construed to mean that the fiduciary may be substituted as a matter of right within the time prescribed by the statute, but the court in its discretion may permit the

fiduciary to be substituted after the time prescribed for good cause shown." *Negro* v. *Metas*, 110 Conn. App. 485, 498, 955 A.2d 599, cert. denied, 289 Conn. 949, 960 A.2d 1037 (2008). We follow, as we must, this long-standing judicial interpretation of the statute.

Contrary to the assertion of the executrix, the notion that the court must have considered § 52-599 and conducted a good cause analysis is unsupported by the record. "As an appellate court, we are limited to the record before us in deciding the merits of an appeal." *In re Amanda A.*, 58 Conn. App. 451, 461, 755 A.2d 243 (2000). Therefore, "it is not an appropriate function of this court to speculate as to the trial court's reasoning . . . ." *Atelier Constantin Popescu, LLC* v. *JC Corp.*, 134 Conn. App. 731, 763, 49 A.3d 1003 (2012). As is set forth previously, the court's articulation of its reason for granting the executrix' motion states in its entirety: "The court granted the motion to open for the purpose of substituting [the executrix] as the party plaintiff because the action of the Probate Court in June, 2017, reopening the estate upon the petition of [the executrix] made it apparent that a 'complete determination' of the controversy before this court could not be had without the presence of [the executrix] as a party. See General Statutes § 52-107; Practice Book § 9-18." It is clear from the language of the court's articulation that it considered and relied on the nearly identical standards provided in § 52-107 and Practice Book § 9-18, both of which govern the intervention of nonparties. The court's articulation did not cite to § 52-599; therefore, we cannot speculate that the court ever considered § 52-599 in granting the executrix' motion to substitute herself as the plaintiff.

Finally, even if it were true, as the executrix contends, that the court utilized its discretion under § 52-599 to grant her untimely motion to open the judgment and to substitute as the plaintiff, neither the executrix nor the court has pointed to any evidence that would support a finding of a reason amounting in law as a legal excuse for the executrix' four year delay in seeking to participate in the judgment case. Therefore, any reliance on § 52-599 in the present case, without more, would be misplaced.

The judgment is reversed and the case is remanded with direction to deny the motion to open and the motion to substitute the executrix as the plaintiff.

In this opinion the other judges concurred.

[1] The complaint also named as defendants Ciarcia Construction, LLC, and ALC Realty, LLC. Since the judgment in favor of Marcus Bordiere was rendered in 2009, Ciarcia Construction, LLC, and ALC Realty, LLC, have been dissolved by the secretary of the state and have not participated in this appeal. We use the term the defendant in this opinion to refer to Michael Ciarcia in his individual capacity only.

[2] In an effort to protect the interest of the estate of Marcus Bordiere in the May 19, 2009 judgment, a judgment lien for the amount of the judgment was placed on the title to a Rocky Hill property that is considered to be an after-discovered asset owned by the defendant. The judgment lien is dated

November 29, 2016, and is recorded at volume 667, pages 312–14 of the Rocky Hill land records.

[3] Practice Book § 9-18 provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party. (See General Statutes § 52-107 and annotations.)"

[4] In addition, the defendant argues that the second motion of the executrix, seeking to substitute herself as the plaintiff in the judgment case should have been barred on res judicata grounds. Because the defendant did not raise res judicata before the trial court, we decline to address this claim. See *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 618, 64 A.3d 1251 (2013) ("to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party" (internal quotation marks omitted)).

[5] General Statutes § 52-599 provides in relevant part: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. . . ."

[6] In his brief on appeal, the defendant states: "Section 52-599 . . . is the sole remedy for the representatives of a deceased sole plaintiff or defendant to revive the original action. . . . [T]he death of [the plaintiff] did not defeat the right of the [e]xecutrix to pursue the judgment, but to avail herself of that right, she was required to take the necessary steps to timely revive the judgment case by making a timely § 52-599 motion for substitution in the judgment case."

_____