## GLADYS NEGRO v. JOHN METAS
## (AC 28213)

McLachlan, Lavine and Robinson, Js.

---

Argued January 23—officially released September 23, 2008

*Joseph P. Ziehl*, for the appellant (administratrix of the estate of the plaintiff).

*Susan M. Phillips*, for the appellee (defendant).

*Opinion*

LAVINE, J. The issue raised in this appeal is whether the trial court improperly denied the motion to open the judgment of dismissal.[1] The action was dismissed

---

[1] The claims raised in this appeal are that (1) the court abused its discretion by (a) denying the motion to open the judgment of dismissal and (b) dismissing the action, and (2) the misrepresentations and actions of the defendant, John Metas, should preclude the remedy of dismissal.

because the fiduciary of the deceased's estate had not been substituted as the party plaintiff pursuant to court order. Before we can reach this claim, however, we must determine whether the appeal is properly before us. We conclude that it is and that it has merit. We therefore reverse the judgment of the trial court.

The following factual and procedural history is relevant to our decision. In the spring of 2001, Gladys Negro (deceased) commenced an action on a promissory note against the defendant, John Metas, her son-in-law. The deceased alleged that the defendant was a resident of the state of Nevada, conducting business in the state of Connecticut. The complaint further alleged that on November 11, 1995, the defendant executed a promissory note under which he promised to pay the deceased the sum of $900,000 in forty-seven equal monthly installments of $5000, which represented interest only, on the first day of each month from March, 1996, through March, 2000. The balance due on the note was payable on April 1, 2000. The note provided, in part, that if the defendant failed to make full and timely payment of any monthly installment by the fifteenth day of any month, payment on the remaining unpaid installments would be accelerated and become due and payable. Furthermore, if the deceased had to retain the services of an attorney for collection, the defendant would be liable for reasonable attorney's fees and costs. The complaint alleged that the defendant had made the required monthly payments for March, April, May and June, 1996, and neglected or refused to pay the remaining installments on the note or the balance due. At the time the action was commenced, the deceased alleged that the defendant owed her $1,277,000 plus accruing interest.[2]

---

[2] The brief submitted on behalf of Sharon L. Freddo represents that when the deceased and her husband were divorced, the deceased received an award of alimony secured by several parcels of real property in Connecticut. The former husband filed a petition in bankruptcy that prevented him from fulfilling his obligation to pay the deceased alimony. The deceased transferred her secured interest in the land to the defendant, a Las Vegas entertain-

The defendant acting pro se denied the principal allegations of the complaint and alleged six special defenses, including failure to state a cause of action, a prior pending action in the federal Bankruptcy Court, lack of standing, laches, unclean hands and equitable estoppel. The deceased denied each of the special defenses.

The defendant attempted to remove the case to federal District Court in Nevada. The District Court denied the removal and awarded the deceased attorney's fees and costs, which the defendant has not paid. The removal process stayed the present action from August, 2004, until February, 2005. Since that time, we note that, the defendant has filed eight motions for a continuance.[3]

The representations of the parties and the record disclose that the deceased died on June 8, 2005. Prior to her death, she executed a new will in which she bequeathed her estate to her three daughters in equal shares. The deceased, however, named Sharon L. Freddo as executrix, rather than Lori A. Metas, who had been named executrix in the deceased's prior will. Freddo and Lori Metas, sisters, are daughters of the deceased. Lori Metas, the defendant's wife, contested the new will in the Court of Probate. The Court of Probate, *Hon. John W. Cooney*, appointed Freddo temporary administratrix of the estate on October 13, 2005.[4]

---

ment producer, who promised to help the deceased turn her claims against her former husband into cash, in consideration of the $900,000 promissory note. The defendant obtained judgments of foreclosure with respect to all of the real property, sold the parcels but failed to pay the deceased more than four monthly installments on the note.

[3] This court may take judicial notice of the trial court file. See *Syragakis v. Syragakis*, 79 Conn. App. 170, 175, 829 A.2d 885 (2003).

[4] The probate decree stated in part: "After due hearing had, the Court finds that Gladys Negro aka Gladys Irwin Negro, late of Manchester, CT, died on the 8th day of June, 2005, possessed of goods and estate remaining to be administered and that it is necessary for the protection of said estate that a temporary administrator be appointed forthwith for the purpose of preserving, protecting, and maintaining the assets of said estate. There will be no distribution from said estate."

On or about October 3, 2005, the defendant, who had been proceeding pro se, retained the law firm of Pepe & Hazard, LLP, to represent him.[5] Pursuant to the trial management schedule, trial was to commence on April 11, 2006. On March 31, 2006, the defendant filed a motion to dismiss the action on the ground that Freddo had failed to be substituted as the plaintiff. The trial court, *Scholl, J.*, heard argument on the motion on April 5, 2006, six days prior to the date trial was to begin. Attorney Joseph P. Ziehl, counsel prosecuting the action, represented to the court that in September, 2005,[6] he had filed a motion to substitute Freddo, administratrix, as plaintiff in this action but that the motion never appeared on any calendar, was not heard and was not reclaimed. Ziehl also represented that the matter of substitution had been discussed at several pretrial hearings with no objection. Judge Scholl ordered Ziehl to file and *have granted* a motion to substitute by April 11, 2006, or the case would be dismissed. The transcript of the proceedings before Judge Scholl reveals that the defendant's counsel never voiced any objection to Freddo's being substituted as the fiduciary to prosecute the action or to the substitution.

At the time Judge Scholl ordered Ziehl to file a motion to substitute, she also granted a motion to withdraw as counsel filed by Pepe & Hazard, LLP.[7] On April 7, 2006, the pro se defendant filed a motion to continue the date of trial.[8] On April 10, 2006, the court, *Bryant, J.*, continued the trial until October 4, 2006.

---

[5] Pepe & Hazard, LLP, also was representing Lori Metas in the Court of Probate.

[6] The court file does not contain a motion to substitute filed in September, 2005.

[7] In the motion to withdraw, James G. Green, Jr., represented that "irreconcilable differences have arisen between [Pepe & Hazard, LLP, and the defendant]. These differences are grounded in the parties' inability to agree upon the means by which [the defendant's] objectives are to be pursued and his case presented."

[8] In his motion for a continuance of the date of trial, the defendant represented, in part, that he needed time to retain new counsel and that the trial

On April 6, 2006, Ziehl filed a motion to substitute party pursuant to General Statutes § 52-599,[9] specifically asking that Freddo as administratrix be substituted as the party plaintiff in lieu of the deceased.[10] On May 6, 2006, the defendant filed an objection to the motion to substitute, claiming that Freddo did not have permission from the Court of Probate to participate in the present action.[11] The court, *Hon. Mary R. Hennessey*, judge trial referee, heard oral argument on the motion on July 10, 2006. The defendant participated in the argument telephonically and represented to the court that Freddo had been appointed temporary administratrix of the deceased's estate for the purpose of providing the Court of Probate with an inventory and accounting and that Freddo had not requested permission from the Court of Probate to be substituted as

was scheduled to commence during Holy Week and that he did not want to travel and be away from his family and church at that time.

[9] General Statutes § 52-599 provides in relevant part: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. . . ."

[10] See 2 Connecticut Practice Series: Civil Practice Forms (4th Ed. 2004) § 106.8.

[11] In his objection, the defendant represented that the deceased's last will was filed in the Manchester Court of Probate on or about August 5, 2005, by attorney Michael Whelton, who asked that Freddo be appointed executrix of the estate. Lori Metas filed a written objection to the will submitted and to Freddo's appointment. A hearing was held before Judge Cooney, judge of probate, on October 13, 2005. The defendant further represented that the parties agreed to allow Freddo to be named temporary administratrix for the purposes of emergency situations only and that she could not take any actions without the Probate Court's approval. The defendant noted that the motion to substitute incorrectly represented that Freddo was the administratrix of the estate. Moreover, Freddo has not sought the approval of the Probate Court to insert herself in the pending action.

the plaintiff in this action. Ziehl argued that the term administratrix includes the temporary administratrix and that Freddo was appointed for the sole purpose of taking this case to trial. Freddo was appointed temporary administratrix, rather than executrix, due to the will contest filed by Lori Metas. Ziehl also pointed out that the probate decree that was appended to the motion to substitute indicates that Freddo was empowered "to do all acts necessary to preserve the assets of the estate." The court sustained the defendant's objection to the motion to substitute and ordered Ziehl to obtain from Judge Cooney a clarification of Freddo's authority.

On August 28, 2006, the then pro se defendant filed a motion to enforce Judge Scholl's order of April 5, 2006, which directed that Freddo be substituted as the party plaintiff by April 11, 2006, or the action would be dismissed. He also represented that Judge Hennessey had ordered that clarification of Freddo's authority be requested of the Court of Probate and that to the date of his motion, no such hearing had taken place. Moreover, the defendant stated that no motion to substitute Freddo as the party plaintiff had been filed since April 6, 2006. The defendant represented that Ziehl had misrepresented Freddo's authority to the Superior Court and requested that Judge Scholl's order of April 5, 2006, be enforced by dismissing the action.

On September 6, 2006, Ziehl filed an objection to the defendant's motion to enforce Judge Scholl's order. In the objection, Ziehl represented that pursuant to Judge Hennessey's order, a hearing was immediately requested in the Probate Court and was scheduled to take place on August 11, 2006, but was continued. Ziehl also represented that the hearing in the Probate Court was rescheduled to take place on September 8, 2006, at which time the issue of Freddo's authority would be clarified. Moreover, trial of the matter was scheduled

to begin on October 4, 2006. On September 11, 2006, an amended motion to substitute party plaintiff was filed in the trial court. The motion stated that "[o]n September 8, 2006, the Probate Court ordered the appointment of Sharon L. Freddo, daughter of the deceased Gladys Negro, as the Executrix of the Estate."

On September 15, 2006, Judge Scholl rendered an order on the defendant's motion to enforce her order of April 5, 2006. In her order, Judge Scholl recited the procedural history through Judge Hennessey's July 10, 2006 order. She also stated that "[t]he defendant has now moved to enforce the court's order of April 5, 2006. The [counsel for the deceased] objects, claiming that there is a hearing in the Probate Court scheduled for September 8, 2006, at which time the issue of the authority to proceed with this action will be clarified. *As of this date*, there has been no motion to substitute as required by the court's order of April 5, 2006, nor is such motion pending. Therefore, the case is dismissed in accordance with that order." (Emphasis added.)

On September 28, 2006, Ziehl filed a motion to open the judgment of dismissal pursuant to Practice Book § 17-4.[12] Judge Scholl denied the motion to open the judgment of dismissal on October 23, 2006.

An appeal was filed on November 9, 2006. Ziehl signed the docketing statement on behalf of "Gladys Negro; Gladys Negro, deceased; and the estate of Gladys Negro by Sharon L. Freddo, executrix." The docketing statement listed the parties as "John Metas, pro se party defendant . . . Gladys Negro, deceased plaintiff . . . Gladys Negro plaintiff . . . Sharon L. Freddo, executrix of the estate of Gladys Negro, nominal plaintiff."

[12] Practice Book § 17-4 (a) provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ."

The defendant retained new counsel, briefs were filed and counsel for both parties appeared for oral argument before this court on January 23, 2008. In reviewing the file thereafter, we concluded that no person formally was recognized to prosecute the appeal.

On March 13, 2008, we sua sponte issued the following order. "The parties are hereby ordered to submit simultaneous supplemental briefs of no more than eight pages by Friday, April 4, 2008, giving reasons, if any, why the appeal should not be dismissed as the fiduciary of the estate of Gladys Negro has not yet filed a motion to be made a party to the appeal. See *Burton* v. *Browd*, 258 Conn. 566 [783 A.2d 457] (2001)."

On April 2, 2008, we received a motion entitled "plaintiff/appellant's motion to make Sharon L. Freddo, executrix, a party to this appeal." On April 23, 2008, the defendant filed a motion for permission to file an opposition out of time to the motion to substitute plaintiff on appeal. On May 1, 2008, we received "plaintiff's objection to defendant's motion for permission to file objection out of time." To resolve the appeal, we first must address the motion to make Freddo, executrix, a party to this appeal and then the question of whether the court abused its discretion in failing to open the judgment of dismissal.

I

MOTION TO BE SUBSTITUTED AS THE PARTY PLAINTIFF

On April 2, 2008, pursuant to Practice Book § 62-5, Freddo as executrix of the estate of the deceased filed a motion to be substituted as the party plaintiff in this appeal. On April 23, 2008, the defendant filed a motion for permission to file an opposition out of time to the motion to substitute plaintiff on appeal. We hereby

grant the motion for permission to file late and the motion to substitute Freddo as the party plaintiff.[13]

When we became aware that no legal entity was prosecuting this appeal, we issued sua sponte an order for supplemental briefs in which we cited *Burton* v. *Browd,* supra, 258 Conn. 566. In that case, the plaintiff prevailed in the trial court but filed a motion for reargument as to the court's award of damages. Id., 567–68. During oral argument on the motion to reargue, the plaintiff learned that the defendant had died. Id., 568. The plaintiff therefore moved for a continuance to substitute the estate of the deceased defendant. Id. The trial court denied both the motion for a continuance and the motion for reargument. Id. The plaintiff appealed, claiming in part that the court improperly had denied the motion for a continuance. Id. This court, "sua sponte, ordered the parties to appear before it to present reasons why the appeal . . . should not be dismissed for failure of either party to substitute a representative of the defendant's estate." Id., 569. The day before the hearing in this court, the plaintiff filed a motion for leave to substitute parties and so informed this court at the time of the hearing. Id. Nonetheless, this court dismissed the appeal for failure to substitute and denied the motion for leave to substitute. Id.

On appeal to our Supreme Court, the plaintiff claimed that this court improperly dismissed her appeal because she had not substituted the estate of the deceased defendant in this court "because her failure to substitute the defendant's estate resulted directly from the action by the trial court that was one of the grounds for her appeal to the Appellate Court." Id., 571. Our Supreme Court ruled that by dismissing the appeal, this court denied

---

[13] Practice Book § 62-5 provides: "Any change in the parties to an action pending an appeal shall be made in the court in which the appeal is pending. The appellate clerk shall notify the clerk of the trial court of any change."

the plaintiff the "opportunity to obtain judicial review of the trial court's actions," which constituted an abuse of discretion. Id., 572.

In this case, the plaintiff claims on appeal that Judge Scholl abused her discretion by denying the motion to open the judgment of dismissal and by granting the motion to dismiss. We cannot review the merits of the appeal without a person legally authorized to prosecute the appeal. Given the circumstances of this case, judicial review of the trial court's rulings should be afforded. We therefore grant the motion to substitute Freddo as the party plaintiff.

## II

## CLAIMS ON APPEAL

The substitute plaintiff claims that the court improperly (1) denied the motion to open the judgment of dismissal and (2) failed to substitute her as the party plaintiff. We agree.

"A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Skinner* v. *Doelger*, 99 Conn. App. 540, 546, 915 A.2d 314, cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007). "Inherent . . . in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . A court's discretion must be informed by the policies that the relevant statute is intended to advance. . . . When reviewing a trial

court's exercise of the legal discretion vested in it, our review is limited to whether the trial court correctly applied the law and reasonably could have concluded as it did." (Internal quotation marks omitted.) *Sabanovic* v. *Sabanovic*, 108 Conn. App. 89, 92, 946 A.2d 1288 (2008).

The following additional facts are relevant to the resolution of the substitute plaintiff's claim. In the September 28, 2006 motion to open the judgment of dismissal, Ziehl addressed the issues cited by Judge Scholl in her order dismissing the case. He represented that the amended motion to appoint Freddo as the substitute plaintiff was pending in court on September 15, 2006, but had not yet been logged into the court's docket.[14] He also represented that a probate hearing scheduled pursuant to Judge Hennessey's order was initially scheduled for August 11, 2006, but was postponed at the request of Lori Metas.

On October 12, 2006, the defendant filed an objection to the motion to open. On October 16, 2006, Ziehl filed a reply to the defendant's objection to the motion to open to which were attached a copy of Michael J. Whelton's[15] July 11, 2006 letter to Judge Cooney[16] and a copy

[14] We take judicial notice that the amended motion to substitute was date stamped by the clerk's office for the judicial district of Hartford on September 11, 2006, and is number 138 on the court's docket.

[15] See footnote 11.

[16] Whelton's letter to Judge Cooney states in part: "On October 13, 2005, you appointed . . . Freddo as temporary administrator of [the deceased's] estate pursuant to an application filed under date of July 29, 2005. The temporary nature of said appointment resulted from an agreement reached by the three daughters of the [deceased] as one sibling, Lori Metas, had objected to said appointment. The basis of said objection was that the [deceased] had sued [the defendant] for defaulting on a promissory note that had a face value of $900,000.00. This note constitutes the most significant asset of the estate. All parties, including [Lori] Metas' counsel, had agreed, in chambers, that a temporary administrator needed to be appointed to pursue the litigation brought against [the defendant]. However, [the defendant] has now taken the position, in civil court, that [Y]our Honor's order did not grant the temporary administrator the power to continue to prosecute the [deceased's] claim against [the defendant]. For that reason, I would request that an order be issued by your court, if appropriate, confirming

of Judge Cooney's memorandum to the Superior Court dated October 11, 2006.[17] Judge Scholl denied the motion to open the judgment on October 23, 2006, stating: "This litigation has been pending for over five years. No proper motion to substitute the executrix or administratrix of the estate as plaintiff was made within the six month period provided for in [§ 52-599 (b)], and no good cause exists for the failure to do so, especially in light of the plaintiff's counsel's claim that the pursuit of this litigation was 'the entire reason for [Freddo's] appointment [as temporary administratrix] in the first place,' that is, on October 13, 2005, and no proper motion to substitute was timely granted as required by the court's order of April 6, 2006, in response to the defendant's motion to dismiss."

"Although at common law the death of a sole plaintiff or defendant abated an action; *Barton* v. *New Haven*, 74 Conn. 729, 730, 52 A. 403 (1902); by virtue of § 52-599, Connecticut's right of survival statute, a cause of action can survive if a representative of the decedent's

the fact that the temporary administrator does have the power to so prosecute said claim."

[17] Judge Cooney's memorandum, prepared at Ziehl's request, stated in part: "The Probate Court appointed a Temporary Administrator in the above referenced matter as a result of an Objection to the Admission of the Will and the appointment of the proposed Executrix by an heir at law, Lori Metas . . . with the understanding that one of the major assets of the estate was a lawsuit pending in Superior Court and that it was understood that a fiduciary—temporary administrator, needed to be appointed to 'legally' stand in the place of the deceased plaintiff pending the outcome of further Probate Court proceedings which may have included a Will Contest. Pending further proceedings of the Probate Court that day the Temporary Administrator was appointed . . . .

"The Decree . . . paraphrases the language of [General Statutes §] 45a-316 . . . 'that it is necessary for the protection of said estate that a temporary administrator be appointed forthwith for the purpose of preserving, protecting and maintaining the assets of said estate.' My understanding of the cited language would include the preservation of a pending lawsuit while the proponents and contestants of the Will have an opportunity to either work out an agreement or proceed with a Will Contest."

estate is substituted for the decedent. It is a well established principle, however, that [d]uring the interval . . . between the death and the revival of the action by the appearance of the executor or administrator, the cause has no vitality. The surviving party and the court alike are powerless to proceed with it. Id., 730–31; see, e.g., *Boucher Agency, Inc.* v. *Zimmer*, 160 Conn. 404, 407, 279 A.2d 540 (1971) . . . ." (Internal quotation marks omitted.) *Burton* v. *Browd*, supra, 258 Conn. 570–71. Moreover, the language of § 52-599, and its predecessor, has been construed to mean that the fiduciary may be substituted as a matter of right within the time prescribed by the statute, but the court in its discretion may permit the fiduciary to be substituted after the time prescribed for good cause shown. See *Hatch* v. *Boucher*, 77 Conn. 347, 349–50, 59 A. 422 (1904); *Warner* v. *Lancia*, 46 Conn. App. 150, 155, 698 A.2d 938 (1997). Statutes in derogation of the common law are remedial in nature and are to be liberally construed to implement their remedial purpose. See *F. B. Mattson Co.* v. *Tarte*, 247 Conn. 234, 238, 719 A.2d 1158 (1998).

The case of *Hennessy* v. *Denihan*, 110 Conn. 646, 149 A. 250 (1930), guides our decision here. In *Hennessy*, James Hennessy, the sole devisee, legatee and executor, filed a written document purporting to be the will of Mary Maguire in the Court of Probate for the district of Torrington. Id., 647. The document named him as the sole heir. Following a hearing, the Probate Court adjudged that the document was not Maguire's will. Id. Between the date of the hearing and issuance of the court's degree, Hennessy died. Id. Michael Hennessy was appointed administrator of the estate of James Hennessy and filed a petition in the Probate Court to open the judgment as to Maguire's will and that he be substituted for James Hennessy as the executor of Maguire's estate. Id., 647–48. The Court of Probate denied the petition, and Michael Hennessy appealed to

the Superior Court, which dismissed the appeal for lack of jurisdiction. Id., 648. Michael Hennessy appealed to our Supreme Court. Id.

Our Supreme Court explained that the Probate Court decree denying Maguire's will was not rendered void because James Hennessy had died; the judgment was "merely irregular." Id., 649. "Forms of proceeding for the accomplishment of justice, whether through the use of a legal fiction or of particular kinds of judicial processes, are but means to an end. They are not so essential to its attainment that every departure from them makes what is done a nullity." (Internal quotation marks omitted.) Id. The Probate Court decree was valid until it was set aside in a proper proceeding. Id. The right of an appeal was not lost by reason of James Hennessy's death; it survived in favor of the administrator of his estate. Id., 649–50. Although Michael Hennessy had no right to have the probate decree set aside in that court, as the administrator of James Hennessy's estate, he had the right to take an appeal to the Superior Court. Id., 650. The right to appeal "was not lost, since the death of James Hennessy suspended the running of the time within which such appeal might be taken." Id.

Section 52-599 (b) provides in relevant part that "[i]f a party plaintiff dies, his executor . . . may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action . . . ." In this action, the deceased died on June 8, 2005, and her will was submitted to the Court of Probate in July, 2005. Lori Metas contested the will, and Freddo, the named executrix, was appointed temporary administratrix on October 13, 2005. On April 6, 2006, a motion was filed in the Superior Court to substitute Freddo as the plaintiff in this action. "[T]he period fixed for taking an appeal would begin to run when the administrator upon his estate was appointed." *Hennessy* v. *Denihan*, supra, 110 Conn. 650. A motion to substitute

Freddo as the party plaintiff, therefore, was filed within six months of her appointment as temporary administratrix and before trial and should have been granted as a matter of right. The court's finding that the motion to substitute was not timely filed is clearly erroneous.

Judge Scholl granted the motion to dismiss, in part, because the motion to substitute had not been filed in conformity with her April 5, 2006 order. Judge Scholl ordered that the motion to substitute be filed and *granted* by April 11, 2006, the date on which trial originally was to commence. The record demonstrates that the motion to substitute was filed on April 6, 2006, but was not heard until July 10, 2006, at which time Judge Hennessey denied it. Although counsel and pro se parties have the power to file a motion to substitute, they lack the authority to have such a motion, or any motion, granted. Only a judge of the Superior Court has the power and authority to grant a motion to substitute. It was therefore an abuse of the court's discretion to deny the motion to open the judgment because the motion to substitute had not been granted by April 11, 2006.

Moreover, in its September 15, 2005 memorandum of decision in which it dismissed the action, the court stated that no motion to substitute Freddo as the party plaintiff was then pending. In the motion to open the judgment of dismissal, Ziehl represented that such a motion had been filed on September 11, 2005, but that it had not been docketed timely. That representation should have given the court pause, as delays occur in the clerk's office from time to time. As the file demonstrates, the motion had been filed but not docketed. Parties ought not be deprived of a legal claim due to the untimely docketing of motions.

Finally, the court stated in denying the motion to open the judgment that no good cause existed for failing

to substitute Freddo as the plaintiff to prosecute the action. At the time the motion to open was ruled on, there was a memorandum from Judge Cooney explaining the will contest and that Freddo was appointed temporary administratrix of the estate to preserve the major asset of the estate, this litigation. Whelton's letter makes clear the reason for the delay in having Freddo's authority clarified; that is that Lori Metas sought a continuance of the August 6, 2006 probate hearing. Judge Cooney's memorandum and Whelton's letter raise questions about the representations of the defendant as to the scope of Freddo's authority as temporary administratrix and explain the reason for the delay.

Judicial discretion "imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice. . . . [R]eversal is required where the abuse is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Browd*, supra, 258 Conn. 570. The allegations of the complaint state a cause of action involving a substantial sum of money—$1.277 million plus accruing interest— owed the deceased's estate. Section 52-599 was enacted to ensure that a cause of action would not be lost due to the death of a party. A motion to substitute Freddo had been filed within six months of her appointment, and prior to trial, and an amended motion was pending in the court when the action was dismissed.

To the extent that the defendant claims that he will be prejudiced by the substitution of Freddo as the party plaintiff, the argument is unpersuasive. The facts of this case are well known to the defendant, and he himself is responsible, in part, for the delay by opposing the motion to substitute filed on April 6, 2006. He also sought and received a continuance of trial from April

11, 2006, until October 4, 2006, and his wife sought postponements in the Probate Court. By the latter date, Freddo had been appointed executrix of the estate, and a motion to substitute her as the party plaintiff was pending in the trial court. For these reasons, we conclude that the court abused its discretion when it denied the motion to open the judgment of dismissal.

The judgment is reversed and the matter is remanded with direction to open the judgment and grant the motion to substitute and for further proceedings.

In this opinion the other judges concurred.