******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ADRIENNE BROCHU, EXECUTRIX (ESTATE OF
ADRIEN BROCHU) *v.* AESYS
TECHNOLOGIES ET AL.
(AC 36483)

Gruendel, Sheldon and Prescott, Js.

*Argued March 16—officially released September 8, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Bellis, J.)

*Marc P. Kunen*, pro hac vice, with whom were *Robert
M. Cheverie*, and, on the brief, *Dino G. Galardi*, pro
hac vice, for the appellant (substitute plaintiff).

*Patrick J. Glinka*, with whom, on the brief, was
*Kimberly Hammond*, for the appellee (defendant

Crane Co.).

*James A. Hall*, with whom, on the brief, was *James R. Oswald*, for the appellee (defendant Foster Wheeler Corp.).

*Kevin C. McCaffrey*, for the appellee (defendant Goulds Pumps, Inc.).

*Opinion*

PRESCOTT, J. In this appeal, the primary issue is whether, following the death of the original plaintiff, an unjustified delay of more than four years in substituting a representative of the decedent's estate as the party plaintiff supports the trial court's dismissal of the action for failure to prosecute with due diligence. A few weeks prior to his death in August, 2009, the original plaintiff, Adrien Brochu, commenced the present action alleging injuries sustained from exposure to asbestos or asbestos containing products attributable to numerous defendants.[1] The current plaintiff, Adrienne Brochu, was appointed as executrix of the decedent's estate in September, 2009, but did not move to substitute herself in as the party plaintiff in this action until December, 2013, more than four years later. The plaintiff[2] now appeals from the trial court's judgment dismissing the action sua sponte on the ground that she failed to prosecute the action with due diligence. The plaintiff claims that, despite the lengthy delay in substituting herself in, the court improperly dismissed the case for lack of diligence because the case was scheduled for trial and she appeared on that trial date ready to proceed. We conclude that the court properly exercised its discretion by dismissing the action for lack of diligence and, accordingly, affirm the judgment of the trial court.[3]

The record reveals the following facts and procedural history relevant to our consideration of the plaintiff's appeal. The decedent was diagnosed in May, 2009, with terminal malignant mesothelioma, a form of cancer. At the beginning of August, 2009, he commenced the present action, which sought damages from the defendants based on allegations that his exposure to the defendants' asbestos or asbestos containing products contributed in whole or in part to his cancer.[4] The decedent died from his illness on August 14, 2009. The plaintiff was appointed as executrix of the decedent's estate on September 2, 2009, less than a month later.

On November 2, 2012, the court issued notice that the matter had been scheduled for a trial date of January 14, 2014.[5] On November 12, 2013, the defendants, with the consent of all parties, filed a motion seeking a continuance of the trial date to October 8, 2014.[6] The defendants provided the following explanation for the requested continuance: "[The decedent] died in 2009 and probate has not been resolved. Furthermore, no witnesses have been disclosed or produced and as such defendants have been unable to depose witnesses or complete any meaningful discovery." Prior to this motion for continuance, the court had not been provided with notice of the decedent's death.

The court, *Bellis, J.*, recognizing that the court could not try the matter without a proper plaintiff, issued notice on November 26, 2013, denying the motion for

continuance without prejudice, stating: "The court, sua sponte, has raised the issue of subject matter jurisdiction, which will be addressed by the court on the first day of trial." The court later directed the clerk to instruct the plaintiff to file a motion to substitute in the estate, with which the plaintiff complied by properly moving to substitute herself in as the party plaintiff on December 19, 2013. The plaintiff provided no explanation in the motion to substitute for why she waited until the eve of trial to file the motion to substitute, and then only after she was asked to do so by the court. The plaintiff stated only that the defendants would not be prejudiced by allowing the substitution because "it has no effect on the allegations made in the original complaint or the factual predicate upon which it is based."[7]

On December 23, 2013, the plaintiff filed a caseflow request asking the court to hear her motion to substitute, and to rehear the motion for continuance, before the scheduled trial date of January 14, 2014. A hearing was held on either January 6, 2014, or January 10, 2014, at which time the trial court deferred ruling on the plaintiff's renewed request for a continuance and indicated its inclination to dismiss the matter for lack of diligence in prosecuting the action.[8]

On January 14, 2014, the date set for trial, the parties again appeared before the court. The court first chose to address the plaintiff's motion to substitute, indicating that it saw no reason not to grant the motion, "not to say that it shouldn't have been filed three and a half years ago." None of the parties voiced any objections, and the court granted the motion without further comment.

The court next turned to the issue that it had raised sua sponte, namely, whether the case should be dismissed because of the plaintiff's failure to prosecute the action with reasonable diligence.[9] The plaintiff did not provide a direct response to the court's request for a reason why she had not filed her motion to substitute in the past three and one-half years. The plaintiff, instead, argued that the defendants also had known since 2009 about the decedent's death and, effectively, had sat on their hands, failing to raise the issue before the court. She also argued that rather than doing nothing to prosecute the present action, she had focused on investigating and preparing the case for trial, and that even if she had been "less than forthright" in seeking to substitute herself in, which she freely admitted that she should have done sooner, she construed General Statutes § 52-599 as giving her up until the trial date to accomplish that task.[10] She further argued that she had filed the motion to substitute immediately after the court directed her to do so, and that the defendants were not prejudiced by the delay, citing the defendants' consent to a further continuance of the trial date as her primary evidence. The plaintiff also indicated that

she was ready to proceed with the trial if that was what the court wished to do, although she recognized that the defendants likely would need an opportunity to depose certain recently discovered fact witnesses.

The defendants argued that despite the plaintiff's suggestion that they could not claim prejudice due to any lack of diligence because they had sat on their own hands, they in fact were substantially prejudiced. In particular, the defendants argued that because there had not been a substitution, and, thus, no valid plaintiff to prosecute the action, they had not had an opportunity to file discovery motions with the court or "to seek any sort of judicial intervention by way of dismissal, summary judgment or otherwise." In other words, the court's inability to entertain substantive motions while there was no plaintiff and the defendants' associated inability to conduct discovery tied their hands. The defendant also noted that, to date, they had received very little discovery from the plaintiff and the plaintiff had not provided them with a list of witnesses. Finally, the defendants argued that because evidence begins to dissipate in asbestos litigation from the date of a plaintiff's diagnosis, the lengthy delay in prosecuting the present case, coupled with their inability to conduct discovery, was highly prejudicial.

After hearing the parties' arguments, the court rendered an oral decision denying the motion for continuance and dismissing the action on the basis of the plaintiff's failure to substitute herself in as the party plaintiff in a timely manner and, thus, to prosecute the action with due diligence.[11] The court later issued the following written notice: "The request for continuance is denied due to the age of the case. After hearing on this date, the court is dismissing the matter for the plaintiff's failure to timely substitute the estate, and for failure to prosecute this matter with due diligence. As articulated by the court following the hearing, it is incumbent upon the plaintiff to prosecute the action with due diligence. Here, the plaintiff's failure to timely file a motion to substitute herself as the party plaintiff, although the estate had been opened in September of 2009 following the decedent's death on August 14, 2009, unnecessarily deprived the court of subject matter jurisdiction for an unreasonable period of time, prevented the defendants from pursuing any discovery motions, and prejudiced the defendants as they could not properly file motions for summary judgment which are filed routinely as a matter of course by asbestos defendants." The court subsequently denied the plaintiff's motion to set aside the dismissal and for reargument. This appeal followed.

The plaintiff claims that the court abused its discretion by dismissing the action for lack of diligence. In support of that claim, the plaintiff first observes that the case had been scheduled for trial and that she

appeared on that date prepared to proceed with the trial. Second, she argues that until the court indicated its inclination to dismiss the case for lack of diligence, the defendants never sought dismissal of the action for lack of diligence or otherwise claimed prejudice resulting from the plaintiff's delay in substituting herself in as representative of the estate. In fact, she argues, the defendants were complicit in seeking a continuance of the trial date.

The plaintiff, however, never provided the court with a compelling reason for her failure to substitute herself in, despite having years in which to do so, nor has she done so on appeal. That failure demonstrated a lack of diligence warranting dismissal because it severely inhibited the forward pace of the litigation, preventing the court from properly considering substantive motions and interfering with the defendants' efforts to obtain necessary discovery. Accordingly, we are not persuaded that the court acted improperly by dismissing the action.

"If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action . . . or on its own motion, render a judgment dismissing the action with costs." Practice Book § 14-3 (a). "Practice Book § 14-3 reflects the judicial branch's interest in having counsel prosecute actions with reasonable diligence. Judges, faced with case flow management concerns, must enforce the pace of litigation coming before the court, rather than allowing the parties to do so." (Internal quotation marks omitted.) *Gillum* v. *Yale University*, 62 Conn. App. 775, 786, 773 A.2d 986, cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001). "Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system." (Internal quotation marks omitted.) *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 32–33, 474 A.2d 787 (1984). This court has previously established that "lengthy periods of inactivity by the plaintiff" constitute sufficient grounds for a trial court to determine that the plaintiff has failed to prosecute an action with reasonable diligence. *Bobbin* v. *Sail the Sounds, LLC*, 153 Conn. App. 716, 729, 107 A.3d 414 (2014), cert. denied, 315 Conn. 918, 107 A.3d 961 (2015); see *Kalb* v. *Aventis Cropscience, USA, Inc.*, 144 Conn. App. 600, 604–606, 74 A.3d 470 (affirming trial court's decision to deny motion to open asbestos litigation that was dismissed for lack of diligence because surviving spouse had failed to take action in case for three and one-half years), cert. denied, 310 Conn. 932, 78 A.3d 858 (2013).

"The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the court. . . . Under [Practice Book § 14-3], the trial court is confronted with endless gradations of diligence, and in its sound discretion, the court must

determine whether the party's diligence falls within the reasonable section of the diligence spectrum. . . . Courts must remain mindful, however, that [i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible . . . and that [o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy [if] that can be brought about with due regard to necessary rules of procedure. . . .

"We review the trial court's decision for abuse of discretion. . . . In determining whether a trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . The trial court's discretion imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice. . . .

"A trial court properly exercises its discretion to dismiss for failure to prosecute if the case has been on the docket for an unduly protracted period or the court is satisfied from the record or otherwise that there is no real intent to prosecute . . . ." (Citations omitted; internal quotation marks omitted.) *Bobbin* v. *Sail the Sounds, LLC*, supra, 153 Conn. App. 726–27. Here, because the court determined that the plaintiff failed to prosecute the present action with reasonable diligence based largely on the plaintiff having waited for more than four years after her appointment as executrix to move to substitute herself in as the representative of the decedent's estate, we turn briefly to the law governing substitutions following the death of a party plaintiff.

General Statutes § 52-599 (b) provides in relevant part: "A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. . . ."

"Although at common law the death of a sole plaintiff or defendant abated an action . . . by virtue of § 52-599, Connecticut's right of survival statute, a cause of action can survive if a representative of the decedent's estate is substituted for the decedent. It is a well established principle, however, that [d]uring the interval . . . between the death and the revival of the action by the appearance of the executor or administrator, the cause has no vitality. The surviving party and the court alike

are powerless to proceed with it. . . . Moreover, the language of § 52-599, and its predecessor, has been construed to mean that the fiduciary may be substituted as a matter of right within the time prescribed by the statute, but the court in its discretion may permit the fiduciary to be substituted after the time described for good cause shown." (Citations omitted; internal quotation marks omitted.) *Negro* v. *Metas*, 110 Conn. App. 485, 497–98, 955 A.2d 599, cert. denied, 289 Conn. 949, 960 A.2d 1037 (2008). Section 52-599 places the decision of whether to proceed with a civil action following the death of a plaintiff directly in the hands of the duly appointed representative of that plaintiff's estate; it is, after all, the fiduciary duty of the representative to decide whether a continuation of any legal proceedings would be in the best interest of the estate. See *Hall* v. *Schoenwetter*, 239 Conn. 553, 564, 686 A.2d 980 (1996). The time for making that decision, however, cannot be without limitations.

The court determined that the plaintiff failed to prosecute the present action with reasonable diligence based primarily upon the plaintiff's unexplained decision to wait for more than four years before exercising her right to substitute herself in as representative of her decedent's estate, during which time both the court and the defendants were left "powerless to proceed." (Internal quotation marks omitted.) *Negro* v. *Metas*, supra, 110 Conn. App. 498, citing *Barton* v. *New Haven*, 74 Conn. 729, 731, 52 A. 403 (1902) (holding that until proper substitution for deceased plaintiff was made, court was left with "dormant proceding" and "effective action could not be taken until it was given new life by the appearance of a party plaintiff qualified to proceed with it"). The plaintiff's inaction unquestionably caused the case to languish on the court's docket with no appreciable activity for several years, which the court reasonably could have construed as an unduly protracted period of dormancy warranting dismissal. Further, the lack of a party plaintiff tied the defendants' hands such that they could not effectively proceed with their defense of the action. They were prejudiced by their inability to effectively engage in discovery or to file substantive motions with the trial court. Accordingly, the lengthy period of inactivity by the plaintiff, coupled with the prejudice to the court and the defendants, demonstrates that the plaintiff's efforts fell well outside the spectrum of reasonable diligence. See *Bobbin* v. *Sail the Sounds, LLC*, supra, 153 Conn. App. 726.

The plaintiff seeks to deflect her own lack of diligence by pointing out what she construes as the defendants' lack of effort to push the litigation forward. It is the obligation of the plaintiff, however, the party who set the wheels of justice in motion, to ensure the forward momentum of the case. Although the defendants had the means to raise the issue of the plaintiff's failure to prosecute to the court earlier than they did, the plaintiff

has cited no authority for the proposition that the defendants' failure to do so should excuse the plaintiff's own lack of diligence.

Even if the plaintiff is correct that she was under no statutory obligation to perfect a substitution prior to trial, an issue that we leave for another day; see footnote three of this opinion; this does not mean that her choice to wait for several years before filing the motion to substitute cannot form the basis of a dismissal for lack of diligence in prosecution. Inaction that suspends any proper activity by the court or by other parties to move a case forward toward a resolution and off of the court's dockets is precisely the type of situation warranting a court's exercise of its discretion to dismiss an action for lack of diligence.

On the basis of our review of the record, we conclude that the court properly exercised its discretion by dismissing the present action for lack of diligence in prosecuting the matter. The matter was commenced in August, 2009, and thus had been on the court's docket for more than four years at the time it was dismissed. More importantly, for the majority of that time period, the case was in limbo and could not properly progress because the decedent had died and, although the plaintiff had been appointed as executrix of his estate within a month of his death, she did not notify the court of the death and, without any explanation, did not move to substitute herself in as representative of the estate for several years. In fact, despite the plaintiff receiving notice in November, 2012, that a trial date had been scheduled for January, 2014, the plaintiff still did not file a motion to substitute until December, 2013, and then only at the behest of the court. The defendants, like the court, were powerless to act prior to the substitution. Accordingly, they were prejudiced by an inability to file motions for summary judgment or other substantive motions and to effectively engage in discovery. The plaintiff failed to provide the court with any reasonable explanation for why she allowed the matter to languish on the docket or why she waited until the eve of trial to effectuate a substitution.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The initial complaint was brought against the following defendants: Aesys Technologies; Alfa Laval, Inc.; Allis Chalmers Corp. Product Liability Trust; American Optical Corp.; American Standard, Inc.; A. O. Smith; Aurora Pump Co.; Bayer Cropscience; Bell & Gossett Co.; Boise Cascade; Bondex International, Inc.; Buffalo Pumps, Inc.; Burnham Corp.; Burnham Holdings, Inc.; Carrier Corp.; CBS Corp.; Columbia Boiler Co.; Crane Co.; Cummings Insulation Co.; D & N Insulation Co.; Elliott Turbomachinery Co., Inc.; Fairbanks Morse Engines; Foster Wheeler Corp.; Garlock Sealing Technologies, LLC; General Electric Co.; Georgia Pacific Corp.; Goodyear Tire & Rubber Co.; Goulds Pumps, Inc.; Homasote Co.; IMO Industries, Inc.; Ingersoll-Rand Co.; Kaiser Gypsum Co., Inc.; Lamons Gasket Co.; Leslie Controls, Inc.; Melrath Gasket; Mobil Corp.; New England Insulation Co.; Peerless Heater Co.; Riley Stoker Corp.; R.W. Beckett Corp.; Scapa Dryer Fabrics, Inc.; Sears Roebuck & Co.; Union Carbide Corp.; Uniroyal Holding, Inc.; Victor Reinz Corp.; Viking Pump, Inc.; Warren Pumps, Inc.; Weil-McLain Co., Inc.; Womco Insulation,

Inc.; Wm. Powell Co.; Yarway Corp.; York Shipley Global; and Zurn Industries, Inc.

The action eventually was withdrawn or otherwise disposed of with respect to all defendants except three: Goulds Pumps, Inc., Foster Wheeler, LLC, and Crane Co. Accordingly, we refer to those three companies collectively as the defendants.

[2] Hereafter, we refer in this opinion to Adrienne Brochu as the plaintiff and to Adrien Brochu as the decedent.

[3] The plaintiff raises as a separate claim of error that the court abused its discretion by also dismissing the case on the ground that she failed in timely fashion to substitute herself in as the legal representative of her decedent's estate. According to the plaintiff, she properly moved to substitute herself in prior to the commencement of the trial, which she argues was all that she was required to do to comply with General Statutes § 52-599 (b). She further notes that the court did not deny the motion to substitute on the ground that it was untimely filed, but rather granted the motion, which was inconsistent with its subsequent dismissal of the action. Because we conclude that the court properly dismissed the action for lack of diligence, we do not address this additional claim of error. Nor is it necessary for us to construe § 52-599 to determine whether the plaintiff's motion to substitute was filed within the time frame set forth therein. For purposes of our analysis, we construe the court's statement that the motion to substitute was not timely filed as conveying that the motion was not filed with reasonable diligence following the death of the decedent, not that the motion technically was late.

[4] At the time the action was filed, the decedent was represented by Attorney Robert Cheverie, who now represents the estate.

[5] We note that a certificate of closed pleadings was never filed in this matter, and therefore, the case was never assigned for a judicially supervised pretrial. See Practice Book §§ 14-8 and 14-11.

[6] In its appellee's brief, Foster Wheeler, LLC, asserts that the motion for continuance was "filed by the plaintiff alone" and that "no defendant joined in that motion." Goulds Pumps, Inc., similarly states in its brief that the motion was filed by the plaintiff. The record before this court shows, however, that the motion for continuance was signed by defense liaison counsel, purportedly on behalf of all the defendants.

[7] The motion to substitute erroneously stated that the plaintiff had not been appointed as executrix until November 26, 2013. At the hearing on the motion, counsel for the plaintiff acknowledged that the November 26, 2013 date was inaccurate, attributing the mistake to his staff and admitting that the appointment had, in fact, occurred in 2009.

[8] The defendants state that the hearing at which the court sua sponte raised the possibility of dismissal for lack of diligence occurred on January 10, 2014. The plaintiff asserts that the hearing was held on January 6, 2014. We are unable to verify the date or what transpired because the record does not include a transcript of those proceeding.

[9] After the court had raised the issue of lack of diligence to the parties, the defendants filed motions to dismiss or motions for summary judgment raising the same issue. It is clear from the record, however, that the court's judgment of dismissal was rendered on the court's own motion; no orders were rendered on the motions filed by the defendants.

[10] The Florida attorney who appeared pro hoc vice on behalf of the plaintiff told the court: "[I]n [asbestos litigation] we do this all the time, Your Honor. People die of mesothelioma between the time of filing and the suit and the trial. That doesn't mean everything comes to a screeching halt in terms of having to substitute that party. It's a perfunctory procedure that pretty much dealt with, and unless the court has to address anything, there is no reason for subject matter jurisdiction to come up because all defense counsel knows. We do this all the time. We take depositions. We do discovery. We put up coworkers. We do this kind of work all the time." The plaintiff's counsel revisited this theme in his rebuttal argument, indicating to the court that failure to substitute "in the asbestos world, happens all the time." The court responded: "That may be but that's not what the law is. What you might do in your asbestos world is one thing, but what the law requires and what this court is held to is another thing."

[11] The court stated as follows: "So with respect to the motion for continuance, I am going to deny the motion for continuance. I do understand that when it was filed it was indicated that it was by consent. However, at the end of the day, it's the court's job to manage the cases and as presiding judge that's what I do. This case is a 2009 case. Although it's only had one

trial date, which I'm not even sure it should have had any trial date because there was no subject matter jurisdiction, but regardless, it is too old and it should have been tried before today and there's—the court's unwilling and finds it unreasonable to continue the case to allow the defendants to now do the discovery they need, to pursue motions for summary judgment, to have objections filed and then continue it four months for a decision on the summary judgment. So I am—I'm going to deny the motion for continuance.

"I would note that it is incumbent upon the plaintiff to prosecute its—prosecute its actions. By failing to substitute the estate in a timely manner, the court has been unnecessarily deprived of subject matter jurisdiction and, moreover, the defendants have been prejudiced because they have effectively been shut out of court. They would be unable to have any discovery motions adjudicated and they would be unable to have any summary judgment motions decided.

"So for those reasons, the court is going to dismiss the action for the plaintiff's failure to substitute the estate in a timely manner and for the failure to prosecute the action with the due diligence that's required."

———————————————